[No. 5961.  Decided March 15, 1906.]

W. W. LAIDLAW, *Appellant*, v. PORTLAND, VANCOUVER AND YAKIMA RAILWAY COMPANY *et al., Respondents.*[1]

MECHANICS' LIENS — LABORERS UPON RAILROAD CONSTRUCTION — PROVISO FOR CONTRACTOR'S BONDS—LIABILITY OF RAILROAD ON FAILURE TO TAKE BOND—STATUTORY CONSTRUCTION. By the act of 1893, p. 32, § 1 (Bal. Code, § 5900), entitled an act providing for the enforcement of liens, without any mention of the provision relating to bonds of contractors, which provides for liens for labor upon specified classes of property, with a proviso to the effect that railroad companies letting work to contractors shall take a bond for the protection of laborers and materialmen, and in case of failure so to do, the company shall be liable to the full extent of such debts contracted by such contractor, construing all the provisions of the act together, the proviso was intended as an exception to the body of the act, whereby the railroad could relieve its property from such liens by the filing of the bond, and it was not intended as an accumulative remedy against the company; hence the effect of failure to file the bond, is to render the railroad property lienable and the company liable over for a deficiency upon perfecting the lien; and the railroad company is not liable to labor claimants unless the liens are perfected.

Appeal from a judgment of the superior court for Clarke county, McCredie, J., entered March 20, 1905, upon sustaining a demurrer to the complaint, dismissing an action to recover from a railroad company the amount of labor claims incurred by a contractor in construction work. Affirmed.

*R. A. Leiter, Wm. D. Fenton,* and *Donald McMaster,* for appellant.

*B. S. Grosscup,* for respondents.

HADLEY, J.—This action was brought to recover on account of labor performed in the construction of the railroad of the defendant Portland, Vancouver & Yakima Railway Company. The cause was determined below on demurrer to the complaint. The essential averments of the complaint

1Reported in 84 Pac. 855.

may be stated as follows: That the above named defendant is a railway corporation, and that during the times hereinafter mentioned it was engaged in the construction of a railway in Clarke county, in this state; that the defendant the Western Construction Company is also a corporation and that in July, 1901, said railway company and construction company entered into an agreement in writing, whereby the construction company agreed to do certain specified construction work for the railway company, and the latter agreed to pay for the labor and materials necessary for such construction, at certain rates and prices set forth in the contract; that the construction company entered upon the performance of said work, and in the course thereof necessarily employed a large number of persons to labor upon the construction of the railroad, and promised to pay them the reasonable value thereof; that between the first day of October, 1901, and the tenth day of March, 1902, the construction company became indebted to divers persons who so labored, the aggregate amount thereof being $37,268.02; that from time to time the construction company issued time checks to such laborers, aggregating said sum, drawn upon the Commercial Bank of Vancouver; that with the consent of the construction company, the holders of said time checks assigned them to said bank, for value received, and that the bank, also, for value received, assigned and delivered the same to the plaintiff, who is now the owner and holder thereof, and of all demands arising thereon; that an accounting was had between the construction company and said bank, and it was agreed that the above sum was due and owing from the former to the latter, and that no part thereof has been paid, although long since due; that the railway company failed to take a bond from the construction company as required by Bal. Code, § 5900; that thereafter said railway company and the Washington & Oregon Railway Company became consolidated as one corporation, under the name of "Washington Railway & Navigation Company;" that by the terms of such consolida-

tion the new company assumed and became liable for the obligations of the old ones. The Portland, Vancouver & Yakima Railway Company and said new corporation, the Washington Railway & Navigation Company, are joined as defendants with the construction company, and judgment is demanded against them all for the full sum above named, with interest. The two railway company defendants demurred generally to the complaint. The demurrer was sustained, plaintiff refused to plead further, and judgment was entered dismissing the action, from which plaintiff has appealed.

It is assigned that it was error to sustain the demurrer. It is stated in appellant's brief that the trial court's decision was due to its belief that the decision in *Armour & Co. v. Western Construction Co.,* 36 Wash. 529, 78 Pac. 1106, is controlling here. That decision dealt with a constitutional feature of the act of 1893, as found in the session laws of that year at page 32, the title of the act being: "An act creating and providing for the enforcement of liens for labor and material." It was held that that portion of the body of the act which purports to create a liability for failure to take a bond from a railroad contractor conditioned to pay for "provisions" is not sufficiently comprehended in the title. What the court would have held if the controversy had been concerning the failure to take a bond to pay for "labor," since labor is named in the title, does not appear from the decision.

The subject of liability for labor not being involved, the act was not discussed with relation thereto, and the opinion cannot therefore be said to be decisive of this case, which does involve an alleged liability for labor.

The gist of the controversy now before us is whether the entire provision in § 1 of the act of 1893, which provides for the taking of a bond and for consequent liability in the event of failure so to do, is obnoxious to the constitution as being a subject not included in the title of the act. The title is short and specific. It relates solely to the enforcement of *liens* for labor and material. If the body of the act contains

provisions not germane to what is expressed in the title, it is subject to the constitutional objection to the extent of such provisions. It is our duty to construe the statute so as to give force to the whole of it, if there is a reasonable way to so construe it without doing violence to the constitutional rules. In attempting such construction, reference must be had to the whole act, and all its parts must be considered together.

It will be observed that § 1 first provides that, "every person performing labor upon or furnishing material to be used in the construction, alteration or repair of any . . . railroad . . . has a lien upon the same . . ." Section 5 provides that no lien shall exist and no action to enforce the same shall be maintained unless, within ninety days from the date of the cessation of the performance of the labor, the claim for such lien shall be filed for record in the office of the county auditor of the county in which the property to be affected is situated. The complaint fails to show that any lien notices were filed. Appellant construed the statute to mean that when a railroad company has contracted with any person for the construction of its road, and has failed to take a bond conditioned that such person shall pay all laborers, then an action shall lie directly against the railroad company, and that no notices of liens are necessary. The title of the act is, however, confined to the enforcement of liens, which subject relates solely to a remedy against specific property, and if the act shall be construed as adding a cumulative remedy by way of creating a distinct personal liability against the railroad company itself, and independent of any lien feature, it may well be contended that such a subject is distinct from that mentioned in the title, and that it is not comprehended therein. In that event, the provisions with regard to the taking of the bond, and resulting liability for failure to take it, would have to be excluded from the operation of the statute. It must, however, be presumed that it was the legislative view that those provisions

may be effective without doing violence to the constitution, and it is our duty to adopt such a view if it can be discovered.

For convenience of reference we here set forth § 1 of the act in full:

"Every person performing labor upon or furnishing material to be used in the construction, alteration or repair of any mining claim, building, wharf, bridge, ditch, dyke, flume, tunnel, fence, machinery, railroad, street railway, wagon road, aqueduct to creat hydraulic power or any other structure, or who performs labor in any mine or mining claim or stone quarry, has a lien upon the same for the labor performed or materials furnished by each, respectively, whether performed or furnished at the instance of the owner of the property subject to the lien, or his agent; and every contractor, subcontractor, architect, builder or person having charge of the construction, alteration or repair of any property subject to the lien as aforesaid, shall be held to be the agent of the owner for the purposes of the establishment of the lien created by this act: *Provided,* That whenever any railroad company shall contract with any person for the construction of its road, or any part thereof, such railroad company shall take from the person with whom such contract is made a good and sufficient bond, conditioned that such person shall pay all laborers, mechanics and material men, and persons who supply such contractors with provisions, all just dues to such persons or to any person to whom any part of such work is given, incurred in carrying on such work, which bond shall be filed by such railroad company in the office of the county auditor in each county in which any part of such work is situated. And if any such railroad company shall fail to take such bond, such railroad company shall be liable to the persons herein mentioned to the full extent of all such debts so contracted by such contractor."

It will be observed that, following the semi-colon after the word "agent," it is provided that "every contractor . . . shall be held to be the agent of the owner for the purposes of the establishment of the lien created by this act." So far the section is complete. It has provided for a lien, and has de-

clared who shall be agents for the purposes of the lien. Now
follows what is designated as a proviso, wherein it is stated
that when a railroad company shall contract with any person
for the construction of its road, it shall take from such per-
son a bond conditioned to pay laborers and materialmen. The
bond is made security for what the prior portion of the sec-
tion has said shall be lienable against the railroad property.
We think the proviso was intended as an exception, and that
the section after the semicolon should be liberally read to
the effect that every contractor shall be held to be the agent
of the owner for the purposes of the lien, except that, in the
case of railroad companies, the contractor's bond for the se-
curity of laborers and materialmen shall dispense with such
agency for the purposes of the lien, and shall take the place
of the lien.

In other words, it seems to us clear that it was intended
to relieve railroad property from the burden of the lien if a
good and sufficient bond is provided for the security of the
labor and material; but that, if such bond is not provided,
then railroad property, like all other classes of property named
in the act, must be subject to the establishment and enforce-
ment of the lien. The failure to take the bond not only sub-
jects the property to the lien, but the railroad company is
also made personally liable in connection with the enforce-
ment of the lien; so that a personal judgment may be had
against it as an additional security, if the lien shall prove
insufficient. Such a construction is urged by respondents,
and we think it is entirely reasonable. It gives force to the
whole section as pertaining to the enforcement of liens. We
see no other way to construe it so as to give operative force
to all provisions in the section and at the same time confine
them to the subject of the enforcement of liens, which is the
subject of the act. The effect of the construction is to say
that, under specified conditions, liens shall be enforced
against railroad and other property, but that railroad prop-

erty shall be excepted from the lien if a specified security is provided. Such a construction places no hardship upon laborers and materialmen. They have but to examine the records of the office of the county auditor of the county wherein the railroad is being constructed, in order to ascertain if a bond has been taken. If they find that there is no such bond, then they must know that their remedy by way of lien is complete, and that they must proceed accordingly.

It is a rule of construction that a proviso often constitutes an exception to the enacting words of the section. "Provisos and exceptions are similar; intended to restrain the enacting clause; to except something which would otherwise be within it, or in some manner to modify it." Sutherland, Stat. Constr., § 222. See, also, Black, Interpretation of Laws, 270. In *In the Matter of George B. Webb*, 24 How. Prac. 247, the court said:

"The office of a proviso is not to enlarge or extend the act or the section of which it is a part, but rather to put a limitation and a restraint upon the language which the lawmaker has employed."

So in the statute before us, the proviso should not be held to enlarge the enacting portion of the section so as to create an entirely independent and cumulative remedy which is not in any sense related to the enforcement of liens, of which subject the enacting part solely treats, but it constitutes an exception defining certain conditions, which shall not be subject to the operation of the enacting part.

Inasmuch, therefore, as the railroad company failed to take a bond, appellant's assignors had a clear and undisturbed right to enforce liens against the railroad, if they complied with § 5 of the act and filed lien notices. The complaint does not show that they did so. Appellant is therefore not in position now to enforce a lien, and the personal judgment which he seeks against respondents can be had only in connection with the enforcement of the lien as already stated.

We therefore think it was not error to sustain the demurrer, and the judgment is affirmed.

MOUNT, C. J., FULLERTON, ROOT, CROW, and DUNBAR, JJ., concur.