[No. 7935.   Department One.   May 20, 1909.]

S. Tsutakawa *et al.*, *Appellants*, v. H. Kumamoto *et al.*, *Respondents.*[1]

Railroads—Construction—Liens — Statutes — Construction — Provisos.  As a proviso to an act is not a part of, but a restraint upon or exception to it, Laws 1893, p. 32, § 1, as amended by Laws 1905, p. 229, which gives a lien to every person "furnishing material to be used in the construction of a railroad" does not give a lien for provisions, groceries and camp equipment supplied to a subcontractor; although there is added a "proviso" to the act to the effect that the railroad company shall take from contractors a bond to pay all persons who supply provisions, or be liable to the extent of such debts.

Statutes—Title of Act—Proviso.  An act entitled an act providing for liens for labor performed, material, provisions, and supplies furnished, the body of which gives a lien for labor and materials only, does not give a lien for supplies, although a proviso makes the company liable for supplies in case a bond is not taken from contractors to secure the same, since the title and provisos to an act do not extend its effect.

Railroads—Construction—Lien.  A complaint in an action against a railroad company and a contractor for equipment sold to the contractor and to foreclose a lien on the railroad, states a cause of action against the contractor, although demurrable as to the company because the statute gives no lien therefor.

Appeal from judgments of the superior court for Thurston county, Linn, J., entered July 27, 1908, August 31, 1908, and October 23, 1908, sustaining demurrers to the complaint, dismissing an action to foreclose a materialman's lien.   Affirmed.

[1]Reported in 101 Pac. 869; 102 Pac. 766.

*James Kiefer* and *Andrew J. Balliet,* for appellants.

*Ellis, Fletcher & Evans, Bogle & Spooner,* and *Roberts & Hulbert,* for respondents.

CHADWICK, J.—The only question involved in this appeal is whether the value of the provisions and groceries and some camp equipment supplied by the appellants to the Nippon Construction Company, while that company was engaged as a subcontractor on the grade of the Oregon and Washington Railroad Company, can be recovered from the railroad company. Failing to receive payment from the subcontractor, appellants filed a lien upon that portion of the railroad grade constructed by them, and thereafter brought this suit to foreclose their lien. All parties defendant other than the Nippon Construction Company appeared in the court below, and filed general demurrers, which were sustained. Appellants elected to stand upon their complaint as finally amended.

This action on their part brings to us for construction § 1, ch. 24, Laws 1893, page 32, as amended by ch. 116, Laws 1905, page 229. The title of the original act was: "An act creating and providing for the enforcement of liens for labor and material." When reenacted no change was made in the body of the act. The title, however, was made to read as follows: "An act relating to liens for labor performed, material, provisions and supplies furnished," etc. The original act was before this court for construction in the case of *Armour & Co. v. Western Construction Co.,* 36 Wash. 529, 78 Pac. 1106, decided January 4, 1905, and in the case of *Laidlaw v. Portland etc. R. Co.,* 42 Wash. 292, 84 Pac. 855, decided March 15, 1906. Section 1 is quoted in full in each of these cases, and will not be reproduced here. In the *Armour* case it was held that a recovery could not be had for provisions furnished by the plaintiffs to a contractor for the construction company, although the word "provisions" was in the proviso of the original act, it being con-

tended that the word "provisions" fell within the reasonable
scope and meaning of the word "material," as used in the
title of the act. This court said:

"The word 'material' has a well defined and understood
legal significance. Every state in the Union has laws for en-
forcing liens for labor and material, furnished in the con-
struction of buildings and other structures; and, when the
title of an act is, 'An act creating and providing for the
enforcing of liens for labor and material,' the mind naturally
goes to the construction which has uniformly been placed
upon the words used in the title of the act, and their ordi-
nary meaning. Under the lien laws, generally, 'material' is
deemed to be something that goes into, and becomes a part
of, the finished structure, such as lumber, nails, glass, hard-
ware, and a thousand other things that might be mentioned
which are necessary to the complete creation of a building or
structure; while the word 'provisions' is ordinarily under-
stood to be—just what was furnished in this case—some kind
of an edible; and it seems to us, in the language of the appel-
lant, that it would be a strained and fantastic view to hold
that provisions of this character were comprehended in the
word 'material.' Webster's definition of material is, 'The sub-
stance or matter of which anything is made or may be made;'
and that, we think, is the ordinary understanding of the
word; while the same author defines provisions as 'a stock of
food; any kind of eatable, collected or stored.' If it should
be held that provisions, in this sense, were lienable under the
title of this act, because they were a necessary element in the
prosecution of the work, by the same reasoning under this
title horses necessarily used in the grading of the road, and
even the food or provisions used by such horses, could reason-
ably be contemplated and provided for in the act. It can
readily be seen that such a construction would destroy all
limitation, and render nugatory this wise provision of the
constitution."

With evident intent to cure this omission of the law, the
change in the title of the act was made, in which, as we
have suggested, the word "provisions" was inserted in the
title. Assuming this to have been the purpose of the legisla-
ture, did it accomplish it? In the construction of statutes,

courts look first to the intent of the act, and if the words employed in the declaring part of the statute be plain, un-- ambiguous, and well understood according to their natural and ordinary sense and meaning, the statute itself furnishes a rule of construction beyond which a court cannot go. A proviso attached to a statute is not a part of, but a restraint upon, an exception to, or a modification of some word or phrase of an act. Sutherland, Stat. Constr. 222; Black, Interpretation of Laws, 270; *The Matter of Webb*, 24 How. Pr. 247. In other words, a proviso or an exception to a general statute involving no uncertainty and doubt cannot be held, nor can words be selected therefrom, to add to the declaration of the subject-matter expressed in the body of the act.

In the case of *Smith v. People*, 47 N. Y. 330, cited and quoted with approval in the case of *Howlett v. Cheetham*, 17 Wash. 626, 50 Pac. 522, it is said "that intent must be primarily sought in the language of the statute, and if words have a well understood meaning, are of themselves precise and unambiguous, in most cases no more can be necessary than to expound them in their natural and ordinary sense." Section 1 of the act contains no words or phrases of doubtful meaning, nor do they lack the element of precision.

"In other words, it seems to us clear that it [the act in question] was intended to relieve railroad property from the burden of the lien if a good and sufficient bond is provided for the security of the labor and material." *Laidlaw v. Portland etc. R. Co., supra.*

There can be no question as to the object of the law. A proviso usually, and in the case at bar, does work an exception to the declaring part of the act. As was said in the same case:

"The bond [provided for in the proviso] is made security for what the prior portion of the section has said shall be lienable against the railroad property."

In that case as in this we must look to the prior portion of the act for the subjects of the lien. We are bound by the act and cannot supply an omission in it by reference to the proviso or the title. The legislature cannot write an enacting clause and a proviso and call it a statute. While a title must be as broad as that part of the act which declares its subject-matter, the law will not be extended in its operation to meet the words or terms employed in the enacting clause if it be broader than the body of the act, as it is in this case. In this conclusion we are sustained by the logic of the *Laidlaw* case. In that case it was sought to charge the company for labor, in a direct action at law. It was held that, notwithstanding the company had not taken the statutory bond, it could not be so held, for its liability was limited by the declaring portion of the act, and the right of action was dependent upon the filing of a lien. The court said:

"So in the statute before us, the proviso should not be held to enlarge the enacting portion of the section so as to create an entirely independent and cumulative remedy which is not in any sense related to the enforcement of liens, of which subject the enacting part solely treats, but it constitutes an exception defining certain conditions, which shall not be subject to the operation of the enacting part."

The object of these statutes is to secure a lien to the laborer and materialman for that which goes into the finished structure. In the case of *McCormick v. Los Angeles City Water Co.*, 40 Cal. 185, the claim of one who had performed service as a cook for men engaged in the construction of a reservoir was rejected, notwithstanding the cooking was done on the ground as the work progressed. In that case the court said:

"If the plaintiff can assert a lien on the facts proved, he could as well have done so if the cooking had been performed at any other place; and if the mere fact that a person is employed to cook for the laborers engaged in erecting a building entitled him to a lien, the same result would follow if he had furnished the provisions also. On the same theory a blacksmith who shod the horses, or a grain dealer who fur-

nished them forage whilst employed on the work, or a wagon maker who repaired the carts of the contractor, would be entitled to a lien on the building. And if every one who contributed indirectly and remotely to the work is entitled to a lien, no reason is perceived why a surgeon called to set a broken limb of one of the laborers, whereby he will be enabled at an early day to resume work on the building, might not assert a lien; but services of this character, not performed on the building, are not within the province of the statute."

Neither can a lien be asserted for the camp equipments, unless we hold that they are comprehended in the term "materials." The word "supplies" was placed in the title of the act of 1905, but it nowhere occurs in the body of the act. The word "supplies" is broader than the word "materials," but "it cannot by any fair construction be construed so as to include material furnished." *Lawson v. Higgins*, 1 Mich. 225.

Liens of this character are in derogation of the common law. Depending solely on the statutes, courts have persistently refused to extend their operation for the benefit of those who furnish supplies, means, or money to carry on a work, unless they come clearly within the terms of the statute. In the case of *Allen v. Elwert*, 29 Ore. 428, 44 Pac. 823, 48 Pac. 54, the supreme court refused to allow a lien for certain tools and appliances belonging to the workmen and used by them merely for the purpose of facilitating their work. The court, in the case of *Gordon Hardware Co. v. San Francisco etc. R. Co.* (Cal.), 22 Pac. 406, in defining the word "material," denied a lien for tools of trade, the court said:

"As well might a house be held under a lien for a chest of carpenter's tools sold to the man who had contracted to build it, as a railroad for picks and shovels used by a contractor in grading it, or for nails, spikes, iron, steel, and other like material used by him for the purpose of erecting temporary habitations and sheds for the occupancy of his men and animals while engaged in the work."

To the same effect is the case of *McAuliff v. Jorgenson*, 107 Wis. 132, 82 N. W. 706.

We think the court did not err in sustaining the demurrer to the amended complaint. The judgment is affirmed.

RUDKIN, C. J., FULLERTON, MORRIS, and GOSE, JJ., concur.

ON REHEARING.

[Decided June 28, 1909.]

PER CURIAM.—Upon petition for rehearing and modification of the judgment of this court, our attention is called to the following expression occurring in the written opinion:

"All parties defendant other than the Nippon Construction Company appeared in the court below, and filed general demurrers, which were sustained."

It is now asserted that the Nippon Construction Company did in fact appear and file a demurrer, which was sustained; and that, under any view of the case, appellants are entitled to a reversal as to the Nippon Construction Company. The transcript does not disclose any demurrer on behalf of the Nippon Construction Company, although it does recite an order overruling such demurrer. No appearance was made in this court by the construction company, and we assumed, as now appears erroneously, that no demurrer had in fact been filed. Therefore, assuming that the demurrer was inadvertently omitted from the transcript, and considering the amended complaint as against the Nippon Construction Company, it clearly states a cause of action. The judgment of the court will, therefore, be modified, and the case remanded with instructions to the lower court to overrule the demurrer of the Nippon Construction Company, and that it entertain such further proceedings as may occur, preliminary to the final judgment.