[No. 12944.   Department Two.   March 11, 1916.]

Du Pont De Nemours Powder Company, *Respondent*, v.
National Surety Company, *Appellant*.[1]

RAILROADS—CONSTRUCTION—LIENS — BOND OF CONTRACTOR — STAT-
UTES—TITLE AND SUBJECTS.   Under Rem. & Bal. Code, § 1129, pro-
viding for liens for labor and supplies furnished in the construction
of certain structures, including a railroad, with a proviso that the
railroad campany shall give a bond for the protection of laborers
and materialmen, "which bond shall be filed . . . in the office
of the county auditor" and that if the company fails to take such
bond it shall be liable to persons furnishing labor and materials,
the bond is made security for what the prior portion of the section
made lienable and relieves the railway property from the lien; and
no other construction would be constitutional, since the title of the
act refers only to the enforcement of liens.

SAME — BOND OF CONTRACTOR — ACTIONS BY CREDITORS — NOTICE OF
LIEN.   An independent action on such bond as a statutory bond can-
not be maintained except in the manner authorized by the statute
for the enforcement of the lien, notice of which must be given by
the filing of a lien notice as required by § 1134.

SAME—BOND BY CONTRACTOR—CREDITORS—COMMON LAW ACTION.
There being no privity, creditors who failed to give notice of lien
cannot maintain a common law action upon a bond given by a rail-
road company under Rem. & Bal. Code, § 1129, in lieu of the stat-
utory lien for labor and supplies furnished in the construction of
the road; the object of the bond under the statute being more to
relieve the railroad property of the lien than for the protection of
creditors of the company.

Appeal from a judgment of the superior court for Pierce
county, Clifford, J., entered June 5, 1915, in favor of the
plaintiff, in an action on an indemnity bond, tried to the
court.   Reversed.

*John W. Roberts* and *George L. Spirk*, for appellant.
*Sullivan & Christian*, for respondent.

HOLCOMB, J.—Respondent brought this action against ap-
pellant to recover the purchase price of powder furnished by

[1]Reported in 155 Pac. 1050.

respondent to the Keasel Construction Company, which had a contract with the Puget Sound & Willapá Harbor Company for the construction of thirteen miles of railroad in Pacific county. The railway company took from the construction company a bond with the appellant as surety, conditioned that the construction company would faithfully perform the contract and pay all claims for labor, materials, supplies, etc. The bond was not filed for record in Pacific or any other county. The construction company having failed to pay for the powder and being unable to do so, the respondent, without having filed any notice of lien against any one, instituted this direct action against the appellant alone. Judgment was entered against the appellant for the amount prayed, this appeal resulting. The facts are not in dispute.

Respondent contends that it can recover on the bond as a statutory one, and if not, then upon it as a common law obligation. Whether either of these theories is correct is determinative of this case.

Section 1129, Rem. & Bal. Code (P. C. 309 § 53) reads as follows:

"Every person performing labor upon or furnishing material to be used in the construction, alteration or repair of any . . . railroad . . . has a lien upon the same for the labor performed or material furnished by each, respectively, whether performed or furnished at the instance of the owner of the property subject to the lien or his agent; and every contractor, subcontractor, architect, builder or person having charge, of the construction, alteration or repair of any property subject to the lien as aforesaid, shall be held to be the agent of the owner for the purposes of the establishment of the lien created by this chapter: Provided, that whenever any railroad company shall contract with any person for the construction of its road, or any part thereof, such railroad company shall take from the person with whom such contract is made a good and sufficient bond, conditioned that such person shall pay all laborers, mechanics, and materialmen, and persons who supply such contractors with provisions, all just dues to such persons or to any per-

son to whom any part of such work is given, incurred in carrying on such work, which bond shall be filed by such railroad company in the office of the county auditor in each county in which any part of such work is situated.   And if any such railroad company shall fail to take such bond, such railroad company shall be liable to the persons herein mentioned to the full extent of all such debts so contracted by such contractor."

Appellant avers that this section is unconstitutional, in so far as it provides that a bond must be taken by the railroad company from its contractors to relieve itself from the liability of a lien against its property, because it was not included within the title of the act.   In support of its contention, it cites *Armour & Co. v. Western Construction Co.*, 36 Wash. 529, 78 Pac. 1106.   The first law upon this subject was passed in 1893, and in that act the words "labor and materials" were used in the title of the act, but not the word "provisions," which was used only in the proviso.   The purchase price of provisions was sought to be recovered in the *Armour* case, and we there held that the word "provisions," used in the proviso, did not come within the reasonable scope of the meaning of the word "materials," used in the title; and in so far as the act attempted to give a cause of action against the bond for provisions, it was unconstitutional.   In referring to the *Armour* case, *supra,* in *Laidlaw v. Portland, Vancouver etc. R. Co.*, 42 Wash. 292, 84 Pac. 855, the court remarked that, in the *Armour* case, it was held that that portion of the body of the act which purported to create a liability upon a railway company for failure to take a bond from a contractor conditioned to pay for provisions is not sufficiently comprehended in the title.

"What the court would have held if the controversy had been concerning the failure to take a bond to pay for 'labor,' since labor is named in the title, does not appear from the decision."

In 1905, the legislature amended the act only by putting the words "supplies and provisions" in the title of the act.

In *Tsutakawa v. Kumamoto*, 53 Wash. 231, 101 Pac. 869, 102 Pac. 766, we held that this did not cure the original defect declared in the *Armour* case, as the word "provisions" appeared only in the proviso and not in the declaratory portion of the act, and that the legislature cannot write an enacting clause and a proviso and call it a statute.

Many other cases referred to declare that the whole portion of the act which requires the railway company to take a bond from its contractor to avoid liability is unconstitutional, but only in so far as supplies and provisions are concerned as being a liability, since they appear only in the proviso and not in the declaratory portion of the act.

In the *Laidlaw* case, *supra*, the court practically held this bond feature of the act valid, since we said that the bond was to take the place of the lien; that is, if the bond was taken by the railway company, it relieved the property of the railway company from being lienable. But if the railway company neglected to take the bond, then a lien could be enforced against this property, and if this was not sufficient a personal judgment could be had for the balance. The court then said:

"Such a construction is urged by respondents, and we think it is entirely reasonable. It gives force to the whole section as pertaining to the enforcement of liens. We see no other way to construe it so as to give operative force to all provisions within the section and at the same time confine them to the subject of the enforcement of liens, which is the subject of the act."

Granting, for the sake of argument, but without deciding, as it is not necessary so to do in determining this case, the contention of respondent that it was not necessary to file the bond inasmuch as it was taken, and that powder is "material" within the meaning of Rem. & Bal. Code, § 1129 (P. C. 309 § 53), we think the contention of appellant that this action must fail, assuming the bond to be a statutory one, must be sustained. The *Laidlaw* case held that the bond

was made security for what the prior portion of the section said should be lienable against the railroad company. In other words, the materialmen in enforcing their claims must enforce them against the bond instead of the property of the railway company, and the taking of the bond relieves the property of the railway company from the burden of the liens and gives force to the whole section pertaining to the enforcement of liens. *A fortiori*, therefore, it follows that, by subjecting the bond to the payment of materialmen's claims, inasmuch as the asset sought to be exhausted and not the manner of exhausting or reaching the asset is substituted, the statutory regulations looking to the enforcement of a lien must be followed. In this case there was no pretense of filing a notice of lien as provided for in Rem. & Bal. Code, § 1134 (P. C. 309 § 63). Nor could the action in any way be construed as one seeking to foreclose a lien. Under the authority of the *Laidlaw* case, this could be the only construction that would not render the bond feature of the act unconstitutional, since the title of the act refers only to the enforcement of liens, and no cause of action could accrue by virtue of § 1129 unless it was in the enforcement of a lien. The proviso does not change the manner of procedure of enforcing the claim from a lien foreclosure to a straight action at law, but only changes the assets from which the claim is to be satisfied from the property of the railway company to the liability of the bond.

If this were not the correct construction of that act, it would work a hardship on surety companies never contemplated by the legislature, in that, if no notice were required, as contended by respondent, a claim could be prosecuted at any time within the statute of limitations against the surety company. Having no notice of the nature or amount of the claim, especially if an old one, the surety company could not make its investigation and prepare for any defense against such claim with any degree of efficiency, or settle or determine it without litigation. It would leave an unsettled and chaotic

condition of affairs until the statute of limitations had run. Having failed to comply with the statutory requirement of filing a notice of lien, and assuming the bond to be a statutory bond, the action must fail.

The other contention of appellant, that this action cannot be maintained, on the assumption that the bond is a common law one, for the reason that there is no privity of contract between respondent and appellant, it seems must also be sustained. In the *Armour* case, the action was against the railway company and its surety, the Aetna Insurance Company, where a bond was given under the provisions of § 1129, here under consideration, and the court there held that there could be no recovery as against the bonding company by a creditor of the contractor as a common law bond, since there was no privity between the creditor and the bonding company. Whether this court has in the meantime consistently followed this rule is immaterial, for it has expressly held it to be controlling in the recent case of *Rust v. United States Fidelity & Guaranty Co.*, 87 Wash. 93, 151 Pac. 248, where this court said:

"In *Armour & Co. v. Western Construction Co.*, 36 Wash. 529, 78 Pac. 1106, we held that a surety company on a private bond was not liable to a materialman as no privity existed between them; that is, the bond was not given for their benefit, and this is the general rule. But respondent argues that we held in effect in *State ex rel. Bartelt v. Liebes*, 19 Wash. 589, 54 Pac. 26; *Baum v. Whatcom County*, 19 Wash. 626, 54 Pac. 29; *McDonald v. Davey*, 22 Wash. 366, 60 Pac. 1116, and *Pacific Bridge Co. v. United States Fidelity & Guaranty Co.*, 33 Wash. 47, 73 Pac. 772, that contracts such as this are for the benefit of the creditors and that they may sue on such a bond for their own benefit. All of these cases except the *McDonald* case involved public bonds, which are presumptively given for the benefit of the creditors to take the place of a lien which does not lie against a municipality. While the court in the *McDonald* case apparently based the holding on the decisions on the same ground, there was sufficient in the

case to show that the bond was intended to protect the creditors. Whether that case is in harmony with the rule stated or not, we regard the *Armour* case as controlling."

See, also, *Spokane Merchants Ass'n v. Pacific Surety Co.*, 86 Wash. 489, 150 Pac. 1054.

It might be argued that this case falls within the rule announced in *State ex rel. Bartelt v. Liebes*, 19 Wash. 589, 54 Pac. 26, and *Baum v. Whatcom County*, 19 Wash. 626, 54 Pac. 29, inasmuch as this bond was given in lieu of the right to file a lien against the railway company, while in the cases just cited the bonds are public ones which are presumptively given for the benefit of the creditors to take the place of the lien which *does not lie* against a municipality. In the case of public bonds, however, the primary object is to protect the creditors, while the object of the bond in question is not so much to protect the creditors as it is to relieve the railway company from the burden of liens against its property, which incidentally might interfere with the public character of the railway company's property. This bond was a contract which was primarily to protect the railway company, while public bonds are primarily to protect creditors, as there can be no lien against a municipality in any event. There was no contractual relation between appellant and respondent concerning this bond, none arises by privity between the parties to the bond, and there being no privity of contract, assuming the bond to be a common law one, the action must fail.

The judgment is therefore reversed and the action dismissed.

MORRIS, C. J., MAIN, PARKER, and BAUSMAN, JJ., concur.