[No. 34282. Department One. December 18, 1958.]

PERCY CONNICK et al., *Appellants*, v. THE CITY OF CHEHALIS et al., *Respondents*.[1]

J. A. *Vander Stoep* and *Hull & Armstrong*, for appellants.

*Lee J. Campbell*, for respondents.

[1]Reported in 333 P. (2d) 647.

OTT, J.—Percy Connick (who will be referred to herein as though he were the sole appellant) was in continuous service as a paid fireman in the Chehalis fire department from 1926 until 1950. He held the rank of captain for more than one year next preceding his retirement on March 31, 1950. The monthly salary attached to the rank of captain at that time was $280 per month. He was paid a fireman's retirement pension in the sum of $125 a month, as provided by Laws of 1935, chapter 39, § 2, p. 101 *et seq.* The monthly salary attached to the rank of captain of the Chehalis fire department was subsequently increased at various times to $305, $335, and, ultimately, to $355.

Mr. Connick commenced this action against the city of Chehalis and the firemen's relief and pension board of the city, in which he contended that the applicable pension act granted to him a fluctuating pension of one half of the salary of an *active member* of the fire department holding the rank of captain, and prayed for judgment accordingly.

The cause was tried to the court upon stipulated facts. Judgment was granted increasing his monthly pension allowance to one half of the salary which *he* had received while holding the rank of captain.

Percy Connick appeals, assigning as error the granting of a *fixed* rather than a *fluctuating* pension.

The city of Chehalis and the firemen's relief and pension board have not cross-appealed; hence, the question of the constitutionality of the 1935 act, which limited the maximum pension payments for firemen to $125 per month, is not before us.

The provision of the retirement act, which is pertinent to the issue here presented, is as follows:

" . . . such member so retired shall be paid from such fund a monthly pension equal to one-half the amount of salary attached to the rank which he may have held in said fire department for one year next preceding the date of such retirement. . . ." Laws of 1919, chapter 196, § 4, p. 670 *et seq.*

Appellant contends that, giving this clause its proper grammatical construction, the legislature granted fluctuating pensions to qualified pensioners. Although the clause is grammatically susceptible of such a construction, the language of the statute likewise can be construed to sustain respondents' contention.

In *O'Neil v. Harding*, 314 Ill. 516, 145 N. E. 593 (1924), the supreme court of Illinois, in construing a similar statute, said:

"It is contended by appellant that the amount of the pension should vary as the 'salary attached to the rank' of active firemen varies. He argues that the phrase 'at the date of his retirement' does not qualify the word 'salary' but the group of words 'the rank which he may have held in the fire service.' This is a refined and artificial construction which does not find a basis in the context. The intention of the legislature is expressed in the whole sentence and not in a part of it. The amount of the pension is determined by the amount of the salary 'attached to' the rank held by the pensioner at the date of his retirement. This indicates that the pension shall be a fixed amount determined at the time the pension begins, and there is nothing to indicate that the amount of the pension is to fluctuate from month to month. A pensioner who is drawing a pension under the section under consideration is entirely severed from the public service and is not subject to call. The legislature has not said that his pension shall vary as the salary of those on active duty varies, and we can think of no sound reason why it should say it."

See, also, *Sup v. Cervenka*, 331 Ill. 459, 163 N. E. 396 (1928), and *Board of Trustees of the Firemen's Relief & Pension Fund v. Hicks*, 161 Okla. 116, 17 P. (2d) 428 (1932).

Our function is to ascertain the meaning which the 1919 legislature intended should be given to the clause in question. See 50 Am. Jur. 224, § 236. In placing a judicial construction upon a legislative enactment, the entire sequence of all statutes relating to the same subject matter should be considered. *State ex rel. Washington Mut. Sav. Bank v. Bellingham*, 183 Wash. 415, 48 P. (2d) 609 (1935). A review of the firemen's pension acts from 1909 through 1957 discloses that the 1929 legislature rejected a provision

which clearly granted a fluctuating pension, and enacted in lieu thereof a statute which definitely established fixed retirement benefits.

■■ Since legislative policy changes as economic and sociological conditions change, the relevant legislative acts which are nearer in time to the enactment in question are more indicative of legislative intent than those which are more remote. Although the act passed by the 1957 legislature can be construed as providing for a fluctuating pension, considering the change in economic conditions from those which existed in 1919, we conclude that the legislative history indicates that the 1919 legislature intended to establish for firemen a fixed, rather than a fluctuating, pension system.

In the instant proceeding, the appellant has entirely severed his employment in public service. His pension payments, being deferred compensation for services previously rendered, must be based upon the contract existing prior to the termination of his employment.

Appellant's contention would deny a pensioner deferred compensation based upon services he performed, and could conceivably reduce or terminate his earned pension benefits. We are convinced that such an interpretation of the statute is not in keeping with the legislative intent.

The judgment is affirmed.

HILL, C. J., MALLERY, and WEAVER, JJ., concur.

FINLEY, J. (concurring in the result)—This court recognized in *Bakenhus v. Seattle* (1956), 48 Wn. (2d) 695, 296 P. (2d) 536, and *Eisenbacher v. Tacoma* (1958), *ante* p. 280, 333 P. (2d) 642, that the legislature can, constitutionally, modify pension and relief rights of policemen and firemen so long as the modifications are equitable to the employee. This, then, should be the basic premise of the court in dealing with all questions involving statutory pension rights of policemen and firemen. I believe this requires the court to look first, always, to the latest legislative enactment —to determine whether the legislature intended it to apply

to the pensioner before the court; and, if so, whether it can constitutionally be applied to such pensioner.

If we adopt this approach in the case at bar; we would examine the firemen's pension and relief acts in the reverse order of their passage.

The superior court judgment in the instant case was entered on March 1, 1957. This was prior to the effective date of chapter 82, Laws of 1957, pages 330-336, so the possible modification of appellant's pension rights by § 3 of that act is not before us; we should reserve judgment on that question until it is properly presented.

Appellant retired prior to the enactment of chapter 382, Laws of 1955, pages 1563-1573. The 1955 act does not reveal a legislative intention that it be applicable to persons who have retired.

The 1947 act (Laws of 1947, chapter 91, p. 581), by its own terms, was not intended to apply to firemen employed prior to January 1, 1947. Appellant became a member of the Chehalis fire department in 1926.

In *Eisenbacher v. Tacoma, supra,* we held that the 1935 act (Laws of 1935, chapter 39, p. 100) could not constitutionally be applied as a limitation on the pension rights of firemen employed prior to its enactment.

This takes us to the 1929 act (Laws of 1929, chapter 86, p. 144). The question of whether that act can constitutionally be applied as a limitation on the pension rights of a fireman employed prior to its enactment has never been presented to this court.

As indicated in the majority opinion, the 1929 legislature rejected proposed legislation which clearly would have granted a fluctuating pension and enacted a provision which definitely established fixed pension benefits based on the salary received by the pensioner immediately prior to retirement. (The fluctuating pension would have been tied to the rank the pensioner held at retirement—varying upward or downward in amount with the changes in pay awarded to active members holding that rank.)

Assuming, *arguendo,* that appellant is correct in his in-

terpretation of the 1919 act (Laws of 1919, chapter 196, p. 668), and, therefore, that he would have been entitled to a fluctuating pension under the 1919 act, can the 1929 act be applied as a limitation on his pension rights?

During inflationary periods a static pension would not be as favorable to a retired fireman, in terms of purchasing power, as would a fluctuating pension; but during deflationary periods the static pension would be the more favorable to the retired fireman. The historic trend of the cost of living is inflationary, so, on the whole, a change from fluctuating to static pension rights would be detrimental to a fireman. However, we must look to the whole 1929 act to determine whether, taken as a whole, the changes effected were equitable to the fireman.

We find the following benefits in the 1929 act: (a) Children of a deceased fireman who are over eighteen years of age, and incompetent, were made eligible to receive a pension in certain instances; (b) Pension benefits were provided during periods of sickness incurred in the line of duty; (c) Firemen who retired after one year of service but before fifteen years, because of disability not incurred in the line of duty; or those who died from causes other than injuries incurred in the line of duty, were entitled to receive back their contributions plus interest; (d) The contributions from the fund to the funeral expenses of firemen were increased.

In addition to the assumed change from fluctuating to static pensions, we find another detriment effected by the 1929 act: the term *widow* was defined so as to *exclude a wife* who married a fireman *after he was drawing a pension.*

On the whole, it cannot be said that the detriments outweigh the benefits. Therefore, in my best judgment, even assuming a modification from fluctuating to static pension rights is effectuated by the 1929 act, it is valid as applied to appellant.

On the basis indicated herein I concur in the result reached by the majority.