158

*In the Matter of the Estates of* JOHN J. DONNELLY *et al.,*
*Deceased.*

KATHLEEN M. KELLY, *as Administratrix, Appellant,* v. JEAN
LOUISE IVERSON, *Respondent.*

*Ronald W. Meier,* for appellant.

*Jones, Grey, Bayley & Olsen, Albert Olsen,* and *George W. Steers,* for respondent.

JAMES, J.—In Washington, may a natural granddaughter inherit from her intestate grandparents, notwithstanding her adoption by her stepfather after the death of her natural father, the son of the decedent grandparents?

The parties to this appeal are in agreement that the relevant and determinative facts are, as found by the trial judge:

JOHN J. DONNELLY and LILY DONNELLY, his wife, had two children, JOHN J. DONNELLY, JR., and KATHLEEN M. KELLY, nee DONNELLY.

JOHN J. DONNELLY, JR., and FAITH LOUISE DONNELLY, his wife, had one child, JEAN LOUISE DONNELLY born on October 28, 1945.

JOHN J. DONNELLY, JR., died on July 9, 1946.

FAITH LOUISE DONNELLY married RICHARD ROGER HANSEN on April 22, 1948.

By Decree of Adoption entered August 11, 1948, in King County Superior Court Probate Cause No. 107444, Richard Roger Hansen adopted Jean Louise Donnelly, whose name was changed to JEAN LOUISE HANSEN. This adoption was approved by Jean Louise's natural mother, Faith Louise Hansen, who retained her relationship as a natural mother in form hereinafter set forth in these findings.

. . .

Lily Donnelly died testate on October 7, 1964. By her Will executed October 16, 1932, she left her entire estate to her husband, John J. Donnelly. She named her two children in the Will but made no provision for them.

John J. Donnelly died testate on September 15, 1970. By his Will executed October 16, 1932, he left his entire estate to his wife, Lily Donnelly. He named his two children in the Will but made no provision for them. He made no provision for the devolution of his estate in the event he was predeceased by Lily Donnelly.

Findings of fact 1, 2, 3, 4, 5, 9 and 10.

 It is undisputed that under the circumstances John J. Donnelly died intestate. *In re Estate of Sims*, 39 Wn.2d 288, 235 P.2d 204 (1951).

Jean Louise Donnelly, the granddaughter, is now, by marriage, Jean Louise Iverson. Kathleen M. Donnelly, the daughter, is now by marriage, Kathleen M. Kelly.

In her capacity as administratrix of her parents' estates, Kathleen Kelly petitioned for a determination of heirship. Her prayer asked that she be determined to be the sole heir of her deceased parents. The trial judge decreed that respondent, the granddaughter, and appellant, the daughter, should share the estate equally. We agree.

Because of their ancestor's intestacy, both daughter and granddaughter must rely upon the provisions of RCW 11.04.015 in claiming a share of his estate.

> The net estate of a person dying intestate shall . . . be distributed as follows:
>
> . . .
>
> (2) . . . the entire net estate if there is no surviving spouse, shall descend and be distributed . . .
> (a) To the *issue* of the intestate; if they are all in the same degree of kinship to the intestate, they shall take equally, or if of unequal degree, then those of more remote degrees shall take by representation.

(Italics ours.)

 The term "issue" as used in Title 11, Probate Law and Procedure—1965 Act, Revised Code of Washington, is defined in RCW 11.02.005(4) as follows:

> "Issue" includes all the lawful lineal descendants of the ancestor, . . .

Both daughter and granddaughter are lineal descendants of their ancestors, John and Lily Donnelly. Black's Law Dictionary 530 (4th rev. ed. 1968) defines descendant as:

> One who is descended from another; a person who proceeds from the body of another, such as a child, grandchild, etc., . . .

Appellant agrees that under the provisions of RCW

11.02.005, respondent's share of the estate is one-half if she qualifies as an heir.

> [E]ach share of a deceased person in the nearest degree shall be divided among those of his issue who survive the intestate and have no ancestor then living who is in the line of relationship between them and the intestate, those more remote in degree taking together the share which their ancestor would have taken had he survived the intestate.

RCW 11.02.005(3).

 Prior to the enactment of RCW 11.04.085 in 1965, our Supreme Court held that a natural child could inherit from its natural parent notwithstanding its adoption by another.

> Unless prohibited by statute, an adopted child may inherit both from its adoptive parent and from its natural parent.
>
> . . .
>
> Our adoption statute grants to the adopted child the right to inherit from its adoptive parent, but does not divest that child of the right of inheritance from its natural parents. The statute is in derogation of the common law. It cannot be assumed, presumed or inferred that the appellant cannot inherit from her father, in the absence of a legislative declaration to that effect.
>
> "It may stand assumed as sound law that consanguinity is so fundamental in statutes of descents and distributions that it may only be ignored by construction when courts are forced so to do, either by the terms of express statute or by inexorable implication." *Hockaday v. Lynn*, 200 Mo. 456, 8 L. R. A. (N. S.) 117.

*In re Estate of Roderick*, 158 Wash. 377, 381, 291 P. 325, 80 A.L.R. 1398 (1930).

In her brief appellant concedes that "[b]y the same reasoning, a natural grandchild could inherit from his natural grandparents by representation notwithstanding his adoption by another."

It is appellant's position, however, that respondent is denied the status of an heir of her grandfather by RCW 11.04.085 which provides that:

A lawfully adopted child shall not be considered an "heir" of his natural parents for purposes of this title.

While recognizing that by its express terms, RCW 11.04.085 provides only that respondent "shall not be considered an 'heir' of . . ." her deceased *father*, appellant argues that by necessary implication respondent is excluded from her father's *bloodline* and thus, in law, though not in fact, is no longer the "issue" of her paternal grandfather.

The problem is one of statutory construction. Did the legislature, which bestowed the privilege of inheritance by representation upon the grandchild of an intestate, withdraw that privilege when it enacted RCW 11.04.085?

Although statutes which govern succession to intestate property usually recognize the presumed "natural" affections of the intestate, there is no "natural" *right* to inherit. 23 Am. Jur. 2d *Descent & Distribution* § 11 (1965).

[T]he right of inheritance being a privilege, and not an inherent right, the authority which confers it, namely, the legislature, may impose any conditions thereto that it sees fit. Stated in another way, the state's power over property subject to inheritance is plenary.

*In re Estate of Fotheringham,* 183 Wash. 579, 585, 49 P.2d 480 (1935).

Appellant reasons that the Washington adoption statutes and the statutes governing descent and distribution must be considered to be *in pari materia* and read together. Thus read, appellant argues, it must necessarily be inferred that the legislative intent was to completely remove an adopted child from its natural bloodline. Appellant cites *In re Estate of Wiltermood,* Wn.2d 238, 472 P.2d 536 (1970) to support her assertion that in using the word "heir" (of his natural parents) the legislature necessarily meant "issue." The language relied upon by appellant is, "We have concluded, however, that RCW 11.04.085 limits no rights belonging to adopted children by virtue of their adoption. Instead, it changes the definition of the word 'heirs' for the purpose of intestate succession." *In re Estate of Wiltermood, supra* at 236. Appellant says, "It would be an anoma-

lous thing to say that while a natural child cannot inherit from his natural parents, he can still inherit, representing his natural parents, from the remote members of his natural family, such as grandparents, aunts, uncles, nieces, nephews and cousins."

The quoted language from *Wiltermood* upon which appellant relies is clearly *obiter dictum*. It was used by the court in disposing of an argument that in enacting RCW 11.04.085, the legislature violated constitutional mandates because, although the legislation affects inheritance rights of *adopted* children, it was not enacted as an amendment to the *adoption* statute which concerns inheritance rights of adopted children. RCW 26.32.140. The only question before the court in *Wiltermood* was whether an adopted child could share in the estate of his natural mother who had consented to his adoption. The child was denied that right. It was not necessary to conclude that he was not, in law, his mother's "issue" because RCW 11.04.085 *expressly* provides that he could not inherit from her.

■ The primary rule of statutory construction is that the courts must ascertain and declare the intention of the legislature and that the legislative intent must be discovered from the language of the statute itself, if possible. In this endeavor, words must be given their commonly understood meaning. *McDermott v. Kaczmarek*, 2 Wn. App. 643, 469 P.2d 191 (1970). *See generally*, 50 Am. Jur. *Statutes* §§ 219, 223 (1944).

A statute is not open to construction as a matter of course. "Where the language of a statute is plain and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation, and the court has no right to look for or impose another meaning." (Footnotes omitted.) 50 Am. Jur. *Statutes* § 225 (1944).

■ "Anomalous" is not synonymous with "ambiguous." Had the legislature desired to completely remove an adopted child from its natural bloodline, it could have used the word "kin" in place of the word "parents" in RCW 11.04.085. But even if we assume that the restrictive use of

the word "parents" was an inadvertent error, it is error beyond our power to cure. "Courts cannot cure . . . errors in legislation even if the legislature, by inadvertence, brought about the result . . . It is, under our constitution, purely a legislative problem." *State ex rel. Hagan v. Chinook Hotel, Inc.*, 65 Wn.2d 573, 578, 399 P.2d 8 (1965).

> But, whether the seeming lack of logic in this situation is the product of inadvertence or intention, the fact remains that the act lacks such a provision. The court cannot read into a statute anything which it may conceive that the legislature has unintentionally left out.

*Department of Labor & Indus. v. Cook*, 44 Wn.2d 671, 677, 269 P.2d 962 (1954).

As reiterated in *State ex rel. Hagan v. Chinook Hotel, Inc., supra* at 579, "[the] court does not have the function of correcting legislative mistakes. Its only function is to interpret vague or ambiguous language. There is nothing ambiguous in the statute before us."

In *St. Germain v. St. Germain*, 22 Wn.2d 744, 157 P.2d 981 (1945), the rule of *In re Estate of Roderick, supra,* is reaffirmed with language which emphasizes the necessity of explicitly expressed legislative intent to deprive an adopted child of the bounty which would normally be his by reason of intuitive impulses generated by consanguineal ties.

> Our decision relative to the right of an adopted child to inherit from his or her natural parents is based upon the failure of our statutes *specifically* to deprive an adopted child of that right.

(Italics ours.) *St. Germain v. St. Germain, supra* at 751.

We find no ambiguity in RCW 11.04.085 and no explicitly expressed intent to deprive an adopted child his right to inherit from his intestate grandparent.

The judgment of the trial court is affirmed.

FARRIS, A.C.J., and SWANSON, J., concur.

Petition for rehearing denied July 19, 1971.

Review granted by Supreme Court September 21, 1971.