[No. 42081. En Banc. November 14, 1972.]

*In the Matter of the Estates of JOHN J. DONNELLY et al., Deceased.*
KATHLEEN M. KELLY, *as Administratrix, Petitioner,* v. JEAN LOUISE IVERSON, *Respondent.*

*Ronald W. Meier,* for petitioner.

*Albert Olsen* and *George W. Steers* (of *Jones, Grey, Bayley & Olsen*), for respondent.

NEILL, J.—May an adopted child inherit from her natural grandparents? Both the trial court and the Court of Appeals (5 Wn. App. 158, 486 P.2d 1158 (1971)), answered "yes." We granted review (79 Wn.2d 1010 (1971)), and disagree. In speaking of heirs and inheritance, we refer to

the devolution of property by law in intestacy and not by testamentary or other voluntary disposition.

John J. and Lily Donnelly, husband and wife, had two children, a daughter, Kathleen M., now Kathleen M. Kelly, and a son, John J., Jr. The son had one child, Jean Louise Donnelly, born October 28, 1945. Jean Louise's father, John J. Donnelly, Jr., died on July 9, 1946, less than a year after her birth. Her mother, Faith Louise Donnelly, married Richard Roger Hansen on April 22, 1948. By a decree entered August 11, 1948, Jean Louise was adopted by her stepfather with the written consent of her natural mother. She lived with her mother and adoptive father as their child and kept the name Hansen until her marriage to Donald J. Iverson. Thus she is a party to this action as Jean Louise Iverson.

Lily Donnelly, the grandmother, died October 7, 1964, leaving a will in which she named but left nothing to her two children. All of her property she left to her husband, John J. Donnelly, Sr., Jean Louise Iverson's grandfather.

John J. Donnelly, Sr., the grandfather, died September 15, 1970, leaving a will dated October 16, 1932, in which he left his entire estate to his wife, Lily, who had predeceased him. He, too, named but left nothing to his two children, and made no provision for disposition of his property in event his wife predeceased him. His daughter, Kathleen M. Kelly, as administratrix with wills annexed of the estates of her parents, brought this petition to determine heirship and for a declaration that Jean Louise Iverson, the granddaughter, take nothing and that she, Kathleen M. Kelly, the daughter, be adjudged the sole heir of her mother and father, Lily and John J. Donnelly, Sr., to the exclusion of Jean Louise Iverson, her niece and their granddaughter.

The trial court decided that each was an heir. It concluded that Jean Louise Iverson, daughter of John J. Donnelly, Jr., and granddaughter of his father, John J. Donnelly, Sr., should inherit one-half of the latter's estate and that Kathleen M. Kelly, daughter of John J. Donnelly, Sr., should inherit the other half of the estate.

Kathleen M. Kelly, the daughter of decedent, appealed to the Court of Appeals which affirmed, and now to this court. With the issue recognized to be close and of general importance, we granted review (79 Wn.2d 1010 (1971)).

As the trial court in its memorandum opinion and the Court of Appeals noted, the issue is whether RCW 11.04.085, which says that an adopted child shall not be deemed an heir of his natural parents, cuts off the inheritance from the natural grandparents as well. The Court of Appeals put the question precisely, at page 159:

> In Washington, may a natural granddaughter inherit from her intestate grandparents, notwithstanding her adoption by her stepfather after the death of her natural father, the son of the decedent grandparents?

■ The sole beneficiary under his will having predeceased him, John J. Donnelly, Sr., died intestate. *In re Estates of Sims,* 39 Wn.2d 288, 235 P.2d 204 (1951). His estate would thus pass by the statutes governing intestacy according to RCW 11.04.015, which says:

> The net estate of a person dying intestate . . . shall be distributed as follows:
>
> . . .
>
> (2) . . . the entire net estate if there is no surviving spouse, shall descend and be distributed . . .
> (a) To the *issue* of the intestate; if they are all in the same degree of kinship to the intestate, they shall take equally, or if of unequal degree, then those of more remote degree shall take by representation.

(Italics ours.)

■ Issue "includes all of the lawful lineal descendants of the ancestor." RCW 11.02.005(4). A descendant is one "who is descended from another; a person who proceeds from the body of another, such as a child, grandchild." Black's Law Dictionary 530 (4th rev. ed. 1968). Thus, both the daughter and granddaughter are descendants and issue of John J. Donnelly, Sr. The daughter under the descent and distribution statutes would take as the most immediate descendant, and the granddaughter being of more remote degree would take by representation as the sole issue of her

deceased father who stood in the same degree of kinship to John J. Donnelly, Sr., as did Kathleen M. Kelly. RCW 11.04.015.

RCW 11.02.005 (3) states:

[E]ach share of a deceased person in the nearest degree shall be divided among those of his issue who survive the intestate and have no ancestor then living who is in the line of relationship between them and the intestate, those more remote in degree taking together the share which their ancestor would have taken had he survived the intestate.

Thus, a statutory right to inherit one-half of the grandfather's estate is vested in Jean Louise Iverson, the granddaughter, unless that right is divested by operation of RCW 11.04.085, which declares that an adopted child is not to be considered an heir of his natural parents:

A lawfully adopted child shall not be considered an "heir" of his natural parents for purposes of this title.

When the question of the right of an adopted child to inherit from his natural parents came before us, the intent of the legislature was clear from the literal language of the statute. We held that RCW 11.04.085 prevents an adopted child from taking a share of the natural parent's estate by intestate succession. *In re Estate of Wiltermood*, 78 Wn.2d 238, 242-43, 472 P.2d 536 (1970). However, reference to the literal language of RCW 11.04.085 does not answer the instant question, *i.e.*, whether, by declaring that an adopted child shall not take from his natural parent, the legislature also intended to remove the adopted child's capacity to represent the natural parent and thereby take from the natural grandparent.

■ The purpose of statutory interpretation is to ascertain and give effect to the intent of the legislature. To decide whether RCW 11.04.085 also severs the right of the adopted child to inherit from a remote ancestor, we must first determine why the legislature terminated the rights of inheritance with respect to the natural parent. In so doing,

we should be guided by the established principle of statutory interpretation which requires that:

> In placing a judicial construction upon a legislative enactment, the entire sequence of all statutes relating to the same subject matter should be considered.

*Connick v. Chehalis,* 53 Wn.2d 288, 290, 333 P.2d 647 (1958).

The legislature has addressed itself to the inheritance rights of adopted children in both the probate and domestic relations titles of RCW. (RCW Titles 11 and 26.) For example, RCW 26.32.140 also directly affects the inheritance rights of an adopted child:

> By a decree of adoption the natural parents shall be divested of all legal rights and obligations in respect to the child, and *the child* shall be free from all legal obligations of obedience and maintenance in respect to them, and *shall be,* to all intents and purposes, and for all legal incidents, *the child, legal heir, and lawful issue of his or her adopter or adopters, entitled to all rights and privileges, including the right of inheritance* and the right to take under testamentary disposition, and subject to all the obligations of a child of the adopter or adopters begotten in lawful wedlock.

(Italics ours.)

Since RCW 11.04.085 and RCW 26.32.140 each delimit the inheritance rights of an adopted child, the two statutes must be read in pari materia:

> Where . . . two statutes relate to the same subject matter, the court will, in its attempt to ascertain legislative purpose, read the sections as constituting one law to the end that a harmonious total schema which maintains the integrity of both is derived.

*Beach v. Board of Adjustment,* 73 Wn.2d 343, 346, 438 P.2d 617 (1968).

It is clear that: (1) the adopted child cannot take from his natural parent because he is no longer an "heir" (RCW 11.04.085); and, (2) the adopted child enjoys complete inheritance rights from the adoptive parent, as if he were the natural child of the adoptive parent (RCW 26.32.140). Both

statutes are in harmony with the fundamental spirit of our adoption laws—*i.e.*, that for all purposes the adopted child shall be treated as a "child of the adopter . . . begotten in lawful wedlock."

Legislative intent is to be ascertained from the statutory text as a whole, interpreted in terms of the general object and purpose of the legislation. *Guinness v. State*, 40 Wn.2d 677, 679, 246 P.2d 433 (1952); *Nationwide Papers, Inc. v. Northwest Egg Sales, Inc.*, 69 Wn.2d 72, 76, 416 P.2d 687 (1966).

The question at bench should, therefore, be decided in the context of the broad legislative objective of giving the adopted child a "fresh start" by treating him as the natural child of the adoptive parent, and severing all ties with the past. We believe it clearly follows that the legislature intended to remove an adopted child from his natural bloodline for purposes of intestate succession.

The trial court and Court of Appeals, however, held that although an adopted child may not take *from* a natural parent dying intestate, the same child may take *through* the natural parent, by representation, if the natural parent dies before the natural grandparent. Little supportive reasoning is offered for this inconsistent result. In reaching its conclusion, the Court of Appeals reasoned that consanguineal ties are so fundamental that an explicit expression of legislative intent is required to deprive an adopted child of the bounty which would normally be his by reason of the "intuitive impulses" generated by the blood relationship. *In re Estates of Donnelly*, 5 Wn. App. 158, 164, 486 P.2d 1158 (1971). The Court of Appeals reasoned that had the legislature desired to remove an adopted child from its natural bloodline, it could have used the word "kin" in place of the word "parents" in RCW 11.04.085. Thus, since RCW 11.04.085 does not specify that an adopted child may not take from an intestate natural grandparent, this capacity is not lost.

However, where the literal interpretation of a particular word is repugnant to the intent of the legislature

plainly manifested by the legislation taken as a whole, such interpretation ought not to prevail:

> The only object of construction is to ascertain the meaning and intention of the legislature, and when that intention is discovered it is controlling, although it may be contrary to the strict letter of the statute."

*Cory v. Nethery,* 19 Wn.2d 326, 332, 142 P.2d 488 (1943), quoting from *Howlett v. Cheetham,* 17 Wash. 626, 630, 50 P. 522 (1897).

Obviously, the legislature did *not* consider consanguinity to be of controlling importance where the blood relationship must be presumed to be strongest—the natural parent. Moreover, RCW 26.32.140 provides that an adopter and his kin shall inherit from an adopted child to the exclusion of the child's natural parents or kin. Thus if respondent here had predeceased her natural grandfather, he would not have been permitted to inherit from his natural grandchild, any "intuitive impulses" of kinship notwithstanding. And, if consanguinity had *in fact* moved the grandparent to provide for respondent here, he could easily have done so by will.

The legislative policy of providing a "clean slate" to the adopted child permeates our scheme of adoption. The natural grandparents are not entitled to notice of any hearing on the matter of adoption. RCW 26.32.080. RCW 26.32.150 provides that, unless otherwise requested by the adopted, all records of the adoption proceeding shall be sealed and not open to inspection. Pursuant to RCW 26.32.120, a decree for adoption shall provide: (1) for the issuance of a certificate of birth for the adopted child, containing such information as the court may deem proper; and (2) that the records of the registrar shall be secret. RCW 70.58.210 declares that the new birth certificate shall bear the new name of the child and the names of the adoptive parents of the child, but shall make no reference to the adoption of the child. Thus, the natural grandparents have no assurance that they will know the new name or residence of the adopted child. Indeed, in the usual "out of

family" adoption situation the administrator of a deceased natural grandparent's estate will be unable to locate—much less to identify—the post-adoption grandchild.

The consistent theme of the relevant legislation is that the new family of the adopted child is to be treated as his natural family. The only conclusion consistent with the spirit of our overlapping adoption and inheritance statutes is that RCW 11.04.085 was intended to transfer all rights of inheritance out of the natural family upon adoption and place them entirely within the adopted family.

Respondent suggests it is most probable that the legislature never considered the problem of inheritance by adopted persons from their remote natural kin when it passed RCW 11.04.085. Thus, respondent contends that the word "parents" should be strictly construed. We disagree.

> On numerous occasions this court has indicated that a statute should be construed as a whole in order to ascertain legislative purpose, and thus avoid unlikely, strained or absurd consequences which could result from a literal reading. That the spirit or the purpose of legislation should prevail over the express but inept language is an ancient adage of the law.

*Alderwood Water Dist. v. Pope & Talbot, Inc.*, 62 Wn.2d 319, 321, 382 P.2d 639 (1963).

As we stated in *State ex rel. Spokane United Rys. v. Department of Pub. Serv.*, 191 Wash. 595, 598, 71 P.2d 661 (1937):

> The rule that the expression of one thing will, under certain circumstances, exclude others, should be applied as a means of discovering the legislative intent, and its application should not be permitted to defeat the plainly indicated purpose of the legislature. [Citations omitted.]
>
> In determining the legislative intent, the purpose for which a law was enacted is a matter of prime importance in arriving at a correct interpretation of its parts, and
>
> "'A thing which is within the object, spirit and the meaning of the statute is as much within the statute as if it were within the letter.'" 2 Lewis' Sutherland Statutory Construction (2d ed.), §§ 369 and 379.

*Accord, State ex rel. Thorp v. Devin,* 26 Wn.2d 333, 345, 173 P.2d 994 (1946).

The broad legislative purpose underlying our statutes relating to adopted children is consistent only with the inference that RCW 11.04.085 was intended to remove respondent, an adopted child, from her natural bloodline for inheritance purposes. If the adopted child cannot take from her natural father, she should not represent him and take from his father.

The chain of inheritance was broken by respondent's adoption. Reversed.

HAMILTON, C.J., STAFFORD, WRIGHT, and UTTER, JJ., concur.

HALE, J. (dissenting)—I dissent. This court asks whether an adopted child may inherit from her natural grandparents. Both the trial court and the Court of Appeals, 5 Wn. App. 158, 486 P.2d 1158 (1971), answered yes, and I agree. I would, therefore, adopt the opinion of the Court of Appeals verbatim as declaring the law of the state in this case.

But there are other reasons, I think, why the granddaughter is entitled to an inheritance and why the statute, RCW 11.04.085, declaring that an adopted child shall not be *considered* an heir of his natural parents, does not operate to disinherit the granddaughter from her grandfather's estate. As the Court of Appeals so clearly delineated, the statute applies to a parent and child; it does not, except by the most strained analysis and construction, apply to grandparent and grandchild—particularly where the adoption arose from the marriage of the grandchild's widowed natural mother. The grandchild's adoption by her widowed mother's second husband should not be held to affect the lineal relationship between granddaughter and grandfather.

One should note the absence of the simple declarative in RCW 11.04.085. The statute does not say that the adopted child shall not inherit, but instead employs the less categorical terminology that an adopted child shall not be *considered* an " 'heir' of his natural parents" for the purpose of

the title. In reaching the result obtained, the court has had to follow what appears to me to be a labyrinthine maze of statutory interpretation, which I find both unnecessary and inapplicable. If the legislature had intended that the grandchild be disinherited, it could readily have said so. This would, of course, have raised the constitutional question of whether the legislature can lawfully provide that some grandchildren may inherit from their grandparents and great grandparents and other grandchildren in the same degrees of propinquity shall not, and whether there exists sufficient basis under the constitution to sustain the creation of two distinct classes of grandchildren under the descent and distribution statutes.

If the circumstances of this case are changed slightly, the flaw in the court's opinion becomes apparent. Had the plaintiff granddaughter, Jean Louise Iverson, in this case been the sole surviving descendant of her grandfather, John J. Donnelly, Sr., then under the court's opinion, all of the estate of her grandfather, John J. Donnelly, Sr., would escheat to the state. Such a forfeiture of estate, I think, was neither intended by the legislature nor reasonably contemplated by the language it employed in RCW 11.04.085.

One can readily agree with the court's proposition that the legislature has designed the adoption and inheritance code so as to make an adopted child the full equal in law with a natural child and, so far as the law can do so, to establish a relationship between adopted parents and adopted children identical to that of natural parents and children. To that end it expressly enacted that the *natural parents* are divested of all legal rights and obligations; that the adopted child becomes "to all legal intents and purposes and for all legal incidents" the child, legal heir and lawful issue of her adopters, RCW 26.32.140, and that all adoption papers shall be sealed, and remain unopened except upon order of the superior court for good cause shown, and, if so opened, to be sealed again as before. RCW 26.32.150.

But nothing in the Court of Appeals opinion militates against the integrity and totality of an adoption. To the

contrary, that opinion augments this legislatively declared public policy of upholding and preserving the adoption, where this court's opinion will operate against it. Here, the grandfather's son died; his widowed daughter-in-law eventually remarried, and she consented that her new husband adopt her daughter. The new family relationship created by the marriage and adoption presented none of the circumstances of an adoption designed in law to cut off all familial and legal relationships with the adopted child's natural mother nor her grandparents either. The grandchild continued to live with her natural mother and adoptive father presumably with the full knowledge of her grandfather, whose lineal descendant she remained. None of the factors upon which the legislature legislated to seal the records of adoption against the grandfather existed here. And, although the adoption statute makes this granddaughter no less an adopted daughter of her mother's husband, it ought not to be read to make her less a granddaughter of her natural grandfather either. The statute which the court now says disinherits the granddaughter cannot, as the court now says, serve to give the natural granddaughter a "fresh start" or a "clean slate" in the relationship created by the adoption. One is hard put to find where a statute which operates to cut off the plaintiff grandchild from her grandfather's estate gives her a fresh start or a clean slate. The statute could not, and thus did not sever all ties with the past. While it might have severed whatever legal ties existed between her and her dead father, whose heir she had *already* been, the adoption could not be reasonably said to do the same with respect to her natural grandfather.

The court's opinion depends largely on *In re Estate of Wiltermood,* 78 Wn.2d 238, 472 P.2d 536 (1970), as a basis for holding here that if the statute, RCW 11.04.085, deprives the adopted child of *heirship* from its natural parent or parents, it operates ipso facto necessarily to cut off the child's right to inherit from its natural grandparent or grandparents. *Wiltermood* went no further than to cover

the actual issue in controversy and should not be extended by implication to go beyond its reasonable intendments. It arose after enactment of the statute, RCW 11.04.085, and was made in contemplation of this court's earlier decision in *In re Estate of Roderick,* 158 Wash. 377, 291 P. 325, 80 A.L.R. 1398 (1930), which held—before the present statute had been enacted—that an adopted child, unless barred by statute, may inherit from both its adoptive parents and its natural parents. Only after making clear that, unless there was a statute to the contrary, adoption did not cut off heirship from the adopted child's natural parents, did *Wiltermood* declare its *raison d'etre*—that RCW 11.04.085 was such a statute. *Wiltermood* must be limited in application to the language of RCW 11.04.085, which bars inheritance by descent and distribution from the natural parents only.

The court seems to find some operative significance in the statute which declares that those who are of equal degree of kinship to the intestate take in equal shares, but if of unequal degree, those of the more remote degree take by representation. RCW 11.04.015. I see no such operative distinction so far as the actual right to inherit is concerned, except that the statute does establish a fair and reasonable system of classification of the beneficiaries of an intestate and proceeds to treat as equals all those within the same class. Here, Kathleen M. Kelly was the daughter, the sole survivor of that class; and Jean Louise Iverson was the granddaughter, the sole survivor of that class. The statute of descent and distribution does no more than reaffirm or restate the old common-law distinction between taking per stirpes and taking per capita. Thus, in taking "by representation," Jean Louise Iverson is the beneficiary per stirpes, and is entitled to all of the share devolving "by representation" or per stirpes to the grandchildren, and Kathleen M. Kelly, as the sole surviving child, would take that part descending to her as a child the same as though her brother, plaintiff's father, had survived. I see nothing in that statute (RCW 11.04.015) which suggests in any way that the subsequent adoption of the child should cut off the

existence of that class of heirs described as grandchildren or abrogate their taking "by representation" or per stirpes.

Thus, as earlier observed, I would affirm the Court of Appeals and thereby affirm the trial court.

FINLEY, ROSELLINI, and HUNTER, JJ., concur with HALE, J.

Petition for rehearing denied January 4, 1973.