[No. 43030.    En Banc.    December 12, 1974.]

THE STATE OF WASHINGTON, *Appellant,* v. WRIGHT *et al.,*
*Respondents.*

*Slade Gorton, Attorney General, Malachy R. Murphy,*
*Deputy,* and *Darrel L. Peeples, Assistant,* for appellant.

*John M. Wolfe,* for respondents.

HAMILTON, J.—The State appeals from a dismissal of
misdemeanor charges against the defendants arising out of
driving their automobiles on portions of ocean beach con-
trary to an administrative regulation prohibiting such
traffic. The issue presented is whether or not the Washing-
ton State Parks and Recreation Commission (hereinafter
Commission), acting pursuant to the seashore conservation
area act, RCW 43.51.650-.685, and by way of WAC 352-36

-040, may prohibit vehicular traffic at specified times on designated ocean beaches.

The trial court, in dismissing the charges, held the Commission lacked statutory authority to promulgate the prohibitions contained in WAC 352-36-040. We disagree and reverse.

The legislative background and facts are not in dispute. By way of Laws of 1935, ch. 54, § 1, p. 141, Laws of 1901, ch. 105, § 1, p. 217, and Laws of 1901, ch. 110, § 2, p. 225, codified respectively as RCW 79.16.130,[1] .160,[2] and .170,[3] the legislature declared certain Pacific Ocean shores and beaches, including the beach area here involved, to be "public highway[s] forever, and as such highway[s] shall remain forever open to the use of the public." Thereafter, by Laws of 1951, ch. 271, § 46, p. 912, and Laws of 1961, ch. 12, § 46.08.180, p. 252,[4] originally codified as RCW 46.08.180, the

[1]"The tidelands along the shore and beach of the Pacific ocean from the mouth of the Queets river north to Cape Flattery in the state of Washington, excepting, however, such rights as may have been conveyed by the state through deeds covering the second class tidelands in front of section 24, township 31 north, range 16 west, Willamette Meridian, be and the same are hereby declared a public highway forever and as such highway shall remain forever open to the use of the public." RCW 79.16.130.

[2]"The shore and beach of the Pacific ocean including the area or space lying between ordinary high tide and extreme low tide (as such shore and beach now are or hereafter may be) from the southerly point of Damon's Point on the north side of the entrance to Gray's Harbor to the mouth of the Queets river, state of Washington, be and the same are hereby declared a public highway forever, and as such highway shall remain forever open to the use of the public." RCW 79.16.160.

[3]"The shore and beach of the Pacific Ocean, including the area or space lying, abutting or fronting on said ocean and between ordinary high tide and extreme low tide (as such shore and beach now are or hereafter may be) from the Columbia River or Cape Disappointment on the south to a point three hundred feet southerly from the south line of the government jetty on Peterson's Point, state of Washington on the north, be and the same are hereby declared a public highway forever, and as such highway shall remain forever open to the use of the public." RCW 79.16.170.

[4]"For the protection and conservation of natural resources, the county sheriffs, the state patrol and fish and game inspectors are given

legislature placed authority to regulate and control traffic on and along the designated ocean beach highways in law enforcement officials of the county, state, and fish and game departments. Subsequently, in Laws of 1963, ch. 212, § 1, p. 1058, codified as RCW 79.16.172,[5] the legislature declared that the portion of the named ocean beach highways lying between the lines of vegetation and mean high tide be public recreational areas and as such to be forever reserved for public use. Finally, for our purposes here, the legislature, by Laws of 1967, ch. 120, p. 559, as amended by Laws of 1969, 1st Ex. Sess., ch. 55, p. 660, codified as RCW 43.51.650 through .685, enacted the seashore conservation area act with administrative jurisdiction over the area involved placed in the Commission. The principles fostering this enactment were stated by the legislature to be:

> The beaches bounding the Pacific Ocean from the Straits of Juan de Fuca to Cape Disappointment at the mouth of the Columbia River constitute some of the last unspoiled seashore remaining in the United States. They provide the public with almost unlimited opportunities for recreational activities, like swimming, surfing and hiking; for outdoor sports, like hunting, fishing, clamming, and boating; for the observation of nature as it existed for hundreds of years before the arrival of white men; and for relaxation away from the pressures and tensions of modern life. In past years, these recreational activities have been enjoyed by countless Washington citizens, as well as by tourists from other states and countries. The number of people wishing to participate in such recreational activities grows annually. This increasing public pressure makes it necessary that the state dedicate the use of the ocean beaches to public recreation

authority to regulate and control traffic on and along the ocean beach highways as designed and established under RCW 79.16.130, 79.16.160, 79.16.161, 79.16.170 and 79.16.171." Laws of 1961, ch. 12, § 46.08.180, p. 252.

[5]"That portion of the public highway as established by chapter 54, Laws of 1935, chapter 105, Laws of 1901, and chapter 110, Laws of 1901, lying between the line of vegetation and the line of mean high tide, as such lines now are or may hereafter be, is hereby declared a public recreation area and is hereby set aside and forever reserved for the use of the public." RCW 79.16.172.

and to provide certain recreational and sanitary facilities. Nonrecreational use of the beach must be strictly limited. Even recreational uses must be regulated in order that Washington's unrivaled seashore may be saved for our children in much the same form as we know it today.

RCW 43.51.650.

The guidelines to be followed by the Commission in administering the enactment were legislatively stated as follows:

The Washington state parks and recreation commission shall administer the Washington State Seashore Conservation Area in harmony with the broad principles set forth in RCW 43.51.650. Where feasible, the area shall be preserved in its present state; everywhere it shall be maintained in the best possible condition for public use. All forms of public outdoor recreation shall be permitted and encouraged in the area, unless specifically excluded or limited by the commission. While the primary purpose in the establishment of the area is to preserve the coastal beaches for public recreation, other uses shall be allowed as provided in RCW 43.51.650 through 43.51.685, or when found not inconsistent with public recreational use by the Washington state parks and recreation commission.

RCW 43.51.665.

RCW 46.08.180, relating to traffic control on the ocean beach highways, was redesignated as RCW 43.51.680, and amended to read:

For the protection and conservation of natural resources, and for the safety and enjoyment of the public using the beaches, the Washington state parks and recreation commission, after agreement with the Washington state highway commission, shall establish reasonable regulations for the use and control of vehicular traffic on and along the ocean beach highways as designated and established under RCW 79.16.130, 79.16.160, and 79.16.170. The Washington state parks and recreation commission shall cooperate with county sheriffs and the state patrol in enforcing such traffic regulations: *Provided,* That automobile driving shall be permitted on the beaches subject to the authority of the department of fisheries to prohibit driving over clam beds.

RCW 43.51.680.

Commencing in the 42nd regular session of the legislature, amendments to RCW 43.51.680 were introduced. In essence, the proposed amendments would have granted specific authority to the Commission to effect certain closures of the ocean beach highways to vehicular traffic. The amendments did not pass. Ostensibly, however, these efforts prompted a senatorial inquiry of the Attorney General concerning the extent of the Commission's authority under RCW 43.51.680 to limit or prohibit vehicular traffic on the ocean beach highways. On January 12, 1972, the office of the Attorney General issued an opinion, ruling, in essence, that, all pertinent statutes being considered, the legislature intended by RCW 43.51.680 to vest the Commission with authority to regulate the times and places on and along the ocean beach highways where automobiles could be driven, but that the Commission could not prohibit vehicular traffic on all such beaches at all times.

Thereafter, the Commission on April 19, 1972, promulgated order No. 13, ch. 352-36, relating to vehicular traffic on ocean beaches. Section 352-36-040 of that order provides:

RESTRICTED AREAS. (1) Between June 15 and September 15, or during the official closure of the razor clam season if of greater duration than the stated period, vehicular traffic shall be prohibited on North Beach beyond a point which is one-quarter mile north or south of any access road to the beach, south of the mouth of the Copalis River.

(2) Between May 15 and September 15, or during the official closure of the razor clam season if of greater duration than the stated period, vehicular traffic shall be prohibited on the following designated portions of the ocean beaches:

(a) On South Beach from the western terminus of Ocean Avenue in the Town of Westport north to the south jetty at Point Chehalis; PROVIDED THAT, during the remainder of the year vehicles not capable of four wheel drive shall be prohibited from the same area.

(b) On Long Beach from the north jetty at the mouth of the Columbia River to North Head.

WAC 352-36-040.

Subsequently, the defendants and each of them consciously drove their motor vehicles onto prohibited areas of the ocean beaches in violation of WAC 352-36-040. They were arrested and charged as heretofore indicated.

We substantially agree with the conclusions reached by the Attorney General in the January 12, 1972, opinion, *i.e.*, that the legislature in enacting the seashore conservation area act, and particularly RCW 43.51.680, intended to confer upon the Commission authority to selectively, and on a reasonable basis, prohibit vehicular traffic at designated times and places on the ocean beach highways created by RCW 79.16.130, .160, and .170, but that the Commission was not empowered to prohibit such traffic on any or all of such beach highways permanently.

RCW 79.16.130, .160, and .170, and the seashore conservation area act relate to the same basic subject matter, *i.e.*, ocean beaches. In ascertaining legislative purpose, statutes which stand in pari materia are to be read together as constituting a unified whole, to the end that a harmonious, total statutory scheme evolves which maintains the integrity of the respective statutes. *Champion v. Shoreline School Dist. 412*, 81 Wn.2d 672, 504 P.2d 304 (1972); *Beach v. Board of Adjustment*, 73 Wn.2d 343, 438 P.2d 617 (1968). Also, the entire sequence of statutes relating to a given subject matter should be considered, since legislative policy changes as economic and sociological conditions change. *Connick v. Chehalis*, 53 Wn.2d 288, 333 P.2d 647 (1958).

Applying these rules to the enactments before us, we believe the conclusion we have reached becomes evident from the legislative history recited above. This history, we are satisfied, marks not an abandonment of, but a gradual withdrawal from, the concept of ocean beaches as public highways in the full sense of that term. Conceivably, in the early years of our state, ocean beaches provided

residents of the localities involved a necessary and conven-
ient route of travel and transportation, due, perhaps, to the
lack of adequate surrounding road nets. However, as the
years passed, inland highway systems markedly improved,
motor vehicular traffic and travel greatly increased, accessi-
bility to the beaches grew and expanded, a widespread
recognition of the unlimited opportunities provided by the
ocean beaches for many varied and competing activities
developed, and vastly enhanced citizen participation in the
recreational opportunities occurred. The legislature re-
sponded to this progression of events.

First, the legislature provided traffic regulation and con-
trol over the ocean beach highways with the original RCW
46.08.180. Then, it withdrew from the impact of RCW
79.16.130, .160, and .170, the area lying between the lines of
vegetation and mean high tide and devoted it to public
recreation. And, in 1967, with the enactment of the sea-
shore conservation area act, the legislature dedicated and
superimposed upon the ocean beach highways a public rec-
reational use, with at least equal, if not superior, standing
to vehicular use.

In impressing the administrative responsibility of the
seashore conservation area act upon the Commission, the
legislature in RCW 43.51.665 directed that the Commission
carry out its responsibility in harmony with the principles
enunciated in RCW 43.51.650; that all forms of public out-
door recreation be permitted and encouraged "unless spe-
cifically excluded or limited by the commission"; and that
other uses contemplated in the act be allowed "when found
not inconsistent with public recreational use" by the Com-
mission. And by RCW 43.51.680, the legislature took note of
RCW 79.16.130, .160, and .170, and provided that, "for the
safety and enjoyment of the public using the beaches," the
Commission should promulgate regulations for the "use and
control" of vehicular traffic on the ocean beach highways.

We are satisfied that inhering in these enactments is the
legislative intent and purpose that the Commission be pos-

sessed of authority to at reasonable times, at reasonable places, and for reasonable reasons, consistent with public safety and recreational objectives, temporarily close ocean beach highways to motor vehicular traffic.

Defendants contend, however, that the proviso attached to RCW 43.51.680, which provides

[t]hat automobile driving shall be permitted on the beaches subject to the authority of the department of fisheries to prohibit driving over clam beds . . .

precludes the Commission from prohibiting, at any time, automotive traffic on the ocean beach highways. We cannot agree with this contention.

■ Among the recognized rules relating to the construction of provisos is that a proviso in a statute must be construed in the light of the body of the statute, and in such a manner as to carry out the legislature's intent as manifested by the entire act and laws in pari materia therewith. *Western Mach. Exch. v. Grays Harbor County,* 190 Wash. 447, 68 P.2d 613 (1937). Provisos operate as limitations upon or exceptions to the general terms of the statute to which they are appended and as such, generally, should be strictly construed with any doubt to be resolved in favor of the general provisions, rather than the exceptions. *Hall v. Corporation of Catholic Archbishop,* 80 Wn.2d 797, 498 P.2d 844 (1972); *State v. Christensen,* 18 Wn.2d 7, 137 P.2d 512, 146 A.L.R. 1302 (1943); *Tatum v. Marsh Mines Consol.,* 108 Wash. 367, 184 P. 628, 187 P. 410 (1919).

Applying these rules to the instant proviso in the context of what we conceive to be the overall intent and purpose of the legislature in enacting the seashore conservation area act, *i.e.,* to achieve a safe and harmonious balance between competing ocean beach activities, we are satisfied that the proviso, strictly construed, does no more than prohibit the Commission from permanently closing the ocean beach highways to automotive traffic. WAC 352-36-040 is, therefore, a valid exercise of the Commission's authority insofar as it does not purport to effect a permanent closure of the

ocean beach highways created by RCW 79.16.130, .160, and .170.

The judgment dismissing the charges is reversed and the cause is remanded for appropriate disposition upon the stipulated facts.

HALE, C.J., and FINLEY, STAFFORD, UTTER, and BRACHTEN-BACH, JJ., concur.

ROSELLINI, J. (dissenting)—The Parks and Recreation Commission by rule WAC 352-36-040 prohibits vehicular traffic between June 15 and September 15 on North Beach.

The authority upon which the Commission relies is RCW 43.51.680:

> For the protection and conservation of natural resources, and for the safety and enjoyment of the public using the beaches, the Washington state parks and recreation commission, after agreement with the Washington state highway commission, shall establish reasonable regulations for the use and control of vehicular traffic on and along the ocean beach highways as designated and established under RCW 79.16.130, 79.16.160, and 79.16.170. The Washington state parks and recreation commission shall cooperate with county sheriffs and the state patrol in enforcing such traffic regulations: *Provided, That automobile driving shall be permitted on the beaches subject to the authority of the department of fisheries to prohibit driving over clam beds.*

(Italics mine.)

The proviso clearly mandates that automobile driving be permitted. It does not prohibit vehicular traffic on and along the ocean beach highways, but does grant authority to the Commission to regulate the use and control of such traffic. It would be difficult, even impossible, to conceive of more succinct, clear and unambiguous language as that used in the proviso—"automobile driving shall be permitted." The language is mandatory. Permission to drive is subject only to the authority granted to the Department of Fisheries to prohibit driving on certain portions of the beaches which includes clam beds.

.: The office of the proviso generally is either to except something from the enacting clause, or to qualify or restrain its generality, or to exclude some possible ground of misinterpretation of it, as extending to cases not intended by the legislature to be brought within its purview; its office is not to confer a power, or as a general rule to enlarge the enactment to which it is appended so as to operate as a substantive enactment itself.

(Footnotes omitted.) 26 *Am. & Eng. Ency. of Law* 678-79 (2d ed. 1904).

In *Tsutakawa v. Kumamoto*, 53 Wash. 231, 234, 101 P. 869, 102 P. 766 (1909), it was stated that

[a] proviso attached to a statute is not a part of, but a restraint upon, an exception to, or a modification of some word or phrase of an act. Sutherland, Stat. Constr. 222; Black, Interpretation of Laws, 270; *The Matter of Webb*, 24 How. Pr. 247. In other words, a proviso or an exception to a general statute involving no uncertainty and doubt cannot be held, nor can words be selected therefrom, to add to the declaration of the subject-matter expressed in the body of the act.

The authority granted by this statute gives the Parks and Recreation Commission the authority to establish regulations for the "use and control" of vehicular traffic on designated portions of ocean beaches, but the proviso excepts therefrom the authority to prohibit automobile traffic.

It would appear that the legislative intent is clear and unambiguous. The legislature intended that automobile traffic be permitted.

The majority relied on the case of *In re Ferguson*, 80 Wash. 102, 141 P. 322 (1914). The *Ferguson* case did not involve a statute with an exception provided by the legislature to a grant of regulatory authority. In that case there was an express grant of the power to regulate. The argument was that "regulation" did not include "prohibition," therefore the cities could not, even to the limited extent attempted, prohibit the showing of motion pictures. We there held that prohibition of theatres on Sunday was within the power to regulate.

But in the present case we have an express limitation upon the authority of the Parks and Recreation Commission. Clearly the *Ferguson* case is distinguishable and not applicable.

It should be noted that the Parks and Recreation Commission, in other provisions of WAC 352-36, does indeed "regulate" vehicular traffic on ocean beach highways, restricting that portion of the beach to be used for traffic, without prohibiting traffic altogether (352-36-050); requiring operators' licenses (352-36-070); fixing speed limits (352-36-080); and prohibiting certain dangerous types of driving, such as "squirreling," etc. (352-36-090).

It should be further noted that RCW 79.16.160 states:

The shore and beach of the Pacific ocean including the area or space lying between ordinary high tide and extreme low tide (as such shore and beach now are or hereafter may be) from the southerly point of Damon's Point on the north side of the entrance to Gray's Harbor to the mouth of the Queets river, state of Washington, be and the same are hereby declared a public highway forever, and as *such highway shall remain forever open to the use of the public.*

(Italics mine.)

This statute gives the public the express right to use the beach as a highway. This provision of the law has never been repealed by the legislature of this state or invalidated by the courts.

Far from repealing the act, the legislature, in the enactment of the provision central to this dispute, RCW 43.51.680, gave express recognition to the status of these beaches as established by the above-cited statute and provided that the Parks and Recreation Commission, after agreement with the Washington State Highway Commission, appropriately

shall establish reasonable regulations for the use and control of vehicular traffic on and along the ocean beach highways as designated and established under RCW 79.16.130, 79.16.160, and 79.16.170.

Neither of the two statutes covers the entire subject mat-

ter, and the two statutes are not repugnant or inconsistent.

It is interesting to note that, although at no previous time did the Washington State Parks and Recreation Commission attempt to close the beach highway, it did seek legislative authority to do so in the 43rd regular session of the state legislature. This defeated attempt followed an unsuccessful effort in the 42nd session of the legislature to obtain favorable action on Senate Bill No. 418, reducing the statutory requirement of agreement with the highway commission to "consultation," and specifically providing that vehicular traffic would be prohibited on certain portions of the beach; Senate Bill No. 111, which would strike the designation as a public highway and grant specific authority to prohibit vehicular traffic (striking the proviso of RCW 43.51.680, specifically preserving the right of vehicular traffic on the beach highway); Engrossed House Bill No. 555, to accomplish the same ends; and House Bill No. 283, again making the same attempt to change the existing statutes which forbid the action taken by the Parks and Recreation Commission in this case. All of these attempts to change the law failed; none were successful in any degree.

It would appear to me that the legislative refusal to grant power sought by the appellant clearly demonstrates that the 1967 act was not intended to delegate the power to the Commission to prohibit driving on the beaches, except over clam beds.

I would hold that there is no express or implied grant of authority or intended grant of authority to the Parks and Recreation Commission to prohibit automobile traffic on the ocean beach highways on areas which are not clam beds and that the action of the Commission in prohibiting automobile operation on the beaches was therefore unlawful.

I would affirm the trial court.

HUNTER and WRIGHT, JJ., concur with ROSELLINI, J.