Bill Keim, Ph.D. Superintendent, Educational Service District 113 601 McPhee Road SW Olympia, WA 98502-5080
Dear Dr. Keim:
By letter previously acknowledged, you have requested our opinion on the following paraphrased question:
When a school district is dissolved and all of its territory istransferred to a single neighboring school district effective August 31of that year, and when the transferred territory is made subject toexcess levies of the receiving district that were approved before thetransfer, at what point in time is the transferred property made subjectto any excess tax levy of the receiving district?
 BRIEF ANSWER
When a school district is dissolved and its territory is transferred to a neighboring district, state law permits, but does not require, the territory of the dissolved district to be made subject to any excess tax levies of the receiving district that were authorized prior to the effective date of the transfer. RCW 84.09.037; RCW 28A.315.095. If the property is made subject to the receiving district's previously-authorized excess levy assessments, then the determination of which tax year those assessments begin depends upon the effective date of the transfer of territory from one school district to the other. If the transfer is effective on or before June 1 of a particular year, then the territory of the dissolved district is included within the excess levy of the receiving district in that year for purposes of levying property taxes for collection in the [Original page 2] following year. For example, if territory had been transferred on or before June 1, 2007, it would be included in the receiving district's levy in 2007 for collection in 2008. On the other hand, if (as here) territory was transferred after June 1, 2007, it is included in the receiving district's levy in 2008 for collection in 2009.[1]
 ANALYSIS
Your question is prompted by events surrounding the recent dissolution of a particular small, non-high school district and the transfer of its territory to a neighboring school district. On June 27, 2007, Educational Service District 113 issued a "Certificate of Transfer of Territory Through Dissolution and Annexation," a copy of which is attached for ease of reference. That certificate memorialized the dissolution of the Vader School District, located in Lewis County, and the transfer of its territory to the neighboring Castle Rock School District in Cowlitz County. Office of Superintendent of Public Instruction, Certificate of Transfer of Territory Through Dissolutionand Annexation (Jun. 27, 2007). The transfer of the territory of the Vader School District to the Castle Rock School District was made effective at midnight, August 31, 2007. Id.
As we understand the matter, at the time that the Vader School District was dissolved and its territory transferred into the Castle Rock School District, the Vader School District had no bonded indebtedness and no voter-approved excess levy in effect.[2] The Castle Rock School District, in contrast, had outstanding bonded indebtedness, and its voters had approved a maintenance and operation levy for collection in 2008. The certificate transferring the Vader territory into Castle Rock concluded by stating:
The transferred territory shall be relieved of all assets and liabilities including bonded indebtedness and special levies of the Vader School District No. 18 and shall assume a proportionate share of all assets and liabilities including bonded indebtedness and special levies of the Castle Rock School District No. 401 upon the effective date of this transfer.
[Original page 3] Id.
The Certificate provides that the territory of the former Vader School District is made subject to the levies of the Castle Rock School District. You now ask whether the former Vader territory should be made subject to Castle Rock's taxes levied in 2007 for collection in 2008 or, alternatively, whether this territory should not be made subject to the Castle Rock assessment until 2008, for collection in 2009. Based on our reading of several interrelated statutes, we conclude that the former Vader territory is not subject to Castle Rock's tax levy until 2008, for collection in 2009.
The state constitution generally limits the aggregate of all property tax levies to one percent of the true and fair value of the property. Const. art. VII, § 2. Taxing districts may exceed this limit with voter approval when specifically authorized to do so by statute. Id. The Legislature has authorized school districts to seek voter approval of such excess levies. RCW 84.52.053. Your question concerns the potential application of excess property tax levies to property transferred to a school district after the voters of the receiving district have authorized an excess levy.
The Legislature has enacted a series of statutes governing the transfer of territory from one school district to another, and the subsequent treatment of such territory for purposes of excess levies approved by the voters prior to the transfer. School district boundaries may be altered in any of three ways:
 (a) By the transfer of territory from one district to another district;
 (b) By the consolidation of one or more school districts with one or more school districts; or
 (c) By the dissolution and annexation to a district of a part or all of one or more other districts or of territory that is not a part of any school district[.]
RCW 28A.315.045(2). For purposes of your request, the analysis is the same no matter which of the three procedures was used in transferring the Vader territory into Castle Rock. We understand that the Vader School District was dissolved pursuant to RCW 28A.315.225 and that its territory was transferred to the Castle Rock School District pursuant to RCW 28A.315.095.
Property taxes are levied in one year, to be collected in the next year. RCW 84.52.030 (time of levy of property tax); RCW 84.56.020 (time of collection of property tax). State law recognizes that the boundaries of a taxing district may change during a particular year and accordingly specifies a set of fixed dates as of which the boundaries are determined for purposes of levying property taxes during that year. The statute reads, in relevant part, as follows:
Except as follows, the boundaries of counties, cities, and all other taxing districts, for purposes of property taxation and the levy of property taxes, shall be the established official boundaries of such districts existing on the first day of August of the year in which the property tax levy is made.
[Original page 4]. . . .
The boundaries of a taxing district shall be established on the first day of June if territory has been added to, or removed from, the taxing district after the first day of March of that year with boundaries coterminous with the boundaries of another taxing district as they existed on the first day of March of that year.
RCW 84.09.030.
As a general rule, this means that if territory is transferred between or among districts during a particular year, the boundaries as of August 1 control when levying property taxes for the district for that year. However, where, as in the circumstances you describe, the entire territory of one district is transferred into another after March 1 of a particular year, then the boundaries of the receiving district as of June 1, rather than August 1, would be used in levying property taxes in the year of the transfer. Id.
Two other statutes establish a discretionary process for determining whether excess levies will apply to property transferred between school districts. The question therefore becomes whether either of these statutes modifies the rule of RCW 84.09.030 and authorizes the use of boundaries as they existed on any other date when levying property taxes. The first of those statutes addresses the authority of regional committees of educational service districts and provides in pertinent part:
The powers and duties of each regional committee are to:
 (5) Provide that territory transferred from a school district by a change in the organization and extent of school districts shall either remain subject to, or be relieved of, any one or more excess tax levies that are authorized for the school district under RCW 84.52.053 before the effective date of the transfer of territory from the school district;
 (6) Provide that territory transferred to a school district by a change in the organization and extent of school districts shall either be made subject to, or be relieved of, any one or more excess tax levies that are authorized for the school district under RCW 84.52.053 before the effective date of the transfer of territory to the school district;
 (7) Establish the date by which a committee-approved transfer of territory shall take effect[.]
RCW 28A.315.095 (5)-(7).
The regional committees thus have the authority to provide that territory moved from one school district to another either is, or is not, subject to one or more excess tax levies authorized for either the district from which the territory is transferred or to which the territory is transferred. RCW 28A.315.095(5), (6). It can also determine the date by which the transfer of [Original page 5] territory takes effect. RCW 28A.315.095(7). The Legislature has established criteria to guide this discretionary process. RCW 28A.315.245. From the Certificate issued in connection with the Vader transfer, it is clear that the committee has exercised this discretion and has made the Vader territory subject to excess tax levies previously authorized by the voters of the Castle Rock School District as of August 31, 2007. Nothing in RCW 28A.315.095, however, grants any discretion to the regional committee to set or to vary the date as of which a taxing district's boundaries are used for purposes of levying taxes. The only authority granted in RCW 28A.315.095 is to determine when the transfer of property itself takes effect, and whether or not the property will be made subject to the receiving school district's levies.[3]
The second statute addresses the authority of the Superintendent of Public Instruction (SPI) and provides as follows:
 Each school district affected by a transfer of territory from one school district to another school district under chapter 28A.315 RCW shall retain its preexisting boundaries for the purpose of the collection of excess tax levies authorized under RCW 84.52.053 before the effective date of the transfer, for such tax collection years and for such excess tax levies as the superintendent of public instruction may approve and order that the transferred territory shall either be subject to or relieved of such excess levies, as the case may be. For the purpose of all other excess tax levies previously authorized under chapter 84.52
RCW and all excess tax levies authorized under RCW 84.52.053 subsequent to the effective date of a transfer of territory, the boundaries of the affected school districts shall be modified to recognize the transfer of territory subject to RCW 84.09.030.
RCW 84.09.037.
The first sentence of RCW 84.09.037 establishes a general rule that when territory is transferred from one school district to another, each district "shall retain its preexisting boundaries for the purpose of the collection of excess tax levies authorized . . . before the effective date of the transfer, for such tax collection years". Id. The sentence then provides an exception "for such excess tax levies as the superintendent of public instruction may approve and order that the transferred territory shall either be subject to or relieved of such excess levies, as the case may be." Id. The exception, however, addresses the matter of which excess levies will apply — not for which tax years they will apply. Although the sentence is structured in a complex way, a close reading reveals that the phrase "for such tax collection years" relates to the language that precedes it in the sentence, and not to the language that follows it. That phrase serves to clarify that the district retains its prior boundaries only for the tax collection years applicable to excess levies authorized before the transfer. The discretion granted to SPI to modify the [Original page6] application of previously-authorized levies addresses only the question of whether to apply "such levies" to the property; it does not provide authority to administratively alter the statutory rule of RCW 84.09.030 as to the date upon which boundaries are fixed for purposes of levying the tax.
The Legislature's choice to specify in statute the date upon which the boundaries of a taxing district are fixed for the purpose of levying property taxes reflects the obvious need to clearly determine which property will and will not be subject to a tax levy. RCW 84.09.030. We accordingly read RCW 84.09.037 in pari materia with RCW 84.09.030 and give effect to both by concluding that the discretion granted to the SPI in RCW 84.09.037 relates only to determining whether property transferred between districts will, or will not, be subject to particular excess tax levies, but it does not provide authority to administratively alter the statutory dates set forth in RCW 84.09.030. See State v. Wright, 84 Wn.2d 645, 650, 529 P.2d 453, 457 (1974) ("In ascertaining legislative purpose, statutes which stand in pari materia are to be read together as constituting a unified whole, to the end that a harmonious, total statutory scheme evolves which maintains the integrity of the respective statutes.")[4]
As applied to the transfer of the former Vader territory into Castle Rock, this means that since the transfer was completed after June 1, that territory cannot be included when levying property taxes for the Castle Rock School District in 2007 for collection in 2008. Rather, the former Vader territory would be included for the first time when levying Castle Rock's property taxes in 2008 for collection in 2009. RCW 84.09.030.
We trust that the foregoing will be useful to you.
ROB MCKENNA Attorney General
JEFFREY T. EVEN Deputy Solicitor General
[1] This June 1 date is based upon the transfer of the entire territory of one district into a single receiving district. If, however, only part of the district's territory is transferred, or if the district's entire territory is divided among two or more receiving districts and transferred into them, then the date by which the transfer must be completed would be August 1, rather than June 1. RCW 84.09.030.
[2] In posing your question, you explain that the Vader School District placed an excess levy request on the March 2007 special election ballot, which the voters rejected. You also explain that this levy request was "communicated to the public as a choice between a Vader levy and the levy of a neighboring district, in this case Castle Rock." The question presented on the ballot for an excess levy election, however, is merely whether the voters favor or oppose the proposed levy, and the ballot gives them the options of voting "yes" or "no." RCW 84.52.053(3). Even if some or all of the voters may have understood that the choice regarding the March 2007 Vader levy had potential consequences as to possible future dissolution of the school district, this was not the question presented to the voters on the ballot. None of the statutes cited in this opinion suggest that such a representation would have any effect upon the determination of when a levy previously approved by Castle Rock's voters could be applied to the former Vader territory.
[3] This conclusion is confirmed by an administrative rule of the Superintendent of Public Instruction implementing RCW 28A.315. WAC392-340-210(2) (explaining that the equitable adjustment of assets and liabilities is subject to the statutory deadline for taxing districts to establish their boundaries and rates for the ensuing tax collection year).
[4] We reasoned similarly in a series of opinions issued during the 1940s. See AGO 47-49 No. 499, at 3 (concluding, under the statutes as they existed at that time, that the school district's boundaries as of the date set forth in statute as the deadline for transfers of property determined whether specific property would or would not be included when levying taxes for a particular year). We explained that the statutory cutoff date is "essential to the orderly process of listing and assessment of property" for a particular year. Id. See also id. at 4-5 (summarizing several opinions issued earlier in the 1940s and employing similar reasoning). Although both RCW 84.09.037 and RCW 28A.315 are more recently enacted, they do not change the analysis, because they do not alter the date by which a property transfer must be completed in order to include it within a taxing district's levy for a particular year.