**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

**FILE**

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
OCTOBER 5, 2023

*González C.J.*
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
OCTOBER 5, 2023

ERIN L. LENNON
SUPREME COURT CLERK

IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| CARMELLA DESEAN, | ) | |
| | ) | |
| Petitioner, | ) | No. 101330-2 |
| | ) | |
| v. | ) | En Banc |
| | ) | |
| ISAIAH SANGER, | ) | |
| | ) | Filed: October 5, 2023 |
| Respondent. | ) | |
| | ) | |

OWENS, J.—The Sexual Assault Protection Order Act (SAPOA), former ch. 7.90 RCW (2020), allows a victim of unwanted sexual contact to seek a civil protection order against the perpetrator. Under the act, a court enters a protection order if it finds that the petitioner has been a victim of nonconsensual sexual conduct or penetration by the respondent. At issue is whether a respondent to sexual assault protection order (SAPO) based on nonconsensual penetration may raise a criminal affirmative defense that they reasonably believed the petitioner had capacity to consent.

Carmella DeSean sought a SAPO against Isaiah Sanger after an evening of drinking ended in unwanted sex. At the evidentiary hearing, Sanger argued DeSean

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

consented and had capacity to do so. The trial court found DeSean lacked capacity due to intoxication, declined to consider Sanger's defense, and granted the SAPO. Sanger appealed, and the Court of Appeals reversed, holding that under the SAPOA and *Nelson v. Duvall*, 197 Wn. App. 441, 387 P.3d 1158 (2017), the trial court should have considered Sanger's affirmative defense.

We reverse the Court of Appeals and hold that the SAPOA does not permit respondents in nonconsensual sexual penetration cases to raise the affirmative defense that they reasonably believed the victim had capacity to consent. The plain language of the statute is unambiguous and omits affirmative defenses. The SAPOA functions independently from the criminal code, and we decline to graft a criminal defense into a statute intended to provide sexual assault victims with civil remedies.

FACTS

In August 2020, Carmella DeSean traveled to Nevada to see her friend, Bailey Duncan. 1 Verbatim Rep. of Proc. (VRP) at 7. There she met Isaiah Sanger, Duncan's roommate, and the three drank heavily one evening. *Id.* at 33-34; Clerks Papers (CP) at 27-29. DeSean's third drink contained tequila and vodka; as she drank it, Sanger chanted, "Chug, chug, chug" and told DeSean, "[Y]ou're going to feel that." 1 VRP at 7; CP at 28, 78. DeSean became noticeably intoxicated, was unable to walk without help, cried, and vomited. CP at 36-39; 1 VRP at 35-36, 60-62. When Duncan checked on her during the night, she was unable to form complete sentences. 1 VRP at 36-37.

2

*DeSean v. Sanger*, No. 101330-2

When DeSean awoke the next morning, she felt that her knees and back were bruised, she had a lump on her head, and her vagina was sore. CP at 4, 28; 1 VRP at 65. She could not remember much of what happened after consuming her third drink. 1 VRP at 69-70. DeSean confronted Sanger, who equivocated about having sex with her. *Id.* at 65-66; CP at 97.

DeSean later asked Duncan to take her to the hospital, where she underwent a sexual assault examination and an interview with a police detective. CP at 26-30; 1 VRP at 67-68. The district attorney's office in Nevada did not pursue charges against Sanger due to insufficient evidence. CP at 35; 1 VRP at 96-98.

*Procedure*

When DeSean returned to Washington, she filed a SAPO petition alleging nonconsensual sexual penetration by Sanger.[1] CP at 1-6. Sanger submitted a statement in response that DeSean gave verbal consent and was coherent the entire time. *Id.* at 7-23.

At the evidentiary hearing, DeSean testified that she was very intoxicated that evening but had flashbacks and remembered saying no to Sanger multiple times. 1 VRP at 61-65. She could not remember having sex with Sanger; thus, she argued she lacked capacity to consent to sex due to intoxication. *Id.* at 117.

---

[1] DeSean's petition was filed pursuant to former chapter 7.90 RCW.

3

*DeSean v. Sanger*, No. 101330-2

Sanger testified that everyone was drunk, he did not do anything against DeSean's will, and he thought DeSean wanted to have sex. *Id.* at 114-15. Relying on *Nelson*, 197 Wn. App. 441, he argued the SAPOA should be read in harmony with the criminal code, which would permit him to raise the defense that he reasonably believed DeSean had capacity to consent. 1 VRP at 122-23.

The trial court rejected Sanger's argument, found that DeSean lacked capacity to consent due to intoxication, and issued a one year SAPO. CP at 120-27.

Sanger appealed, arguing that when a SAPO petitioner alleges lack of capacity, the trial court must consider whether the respondent reasonably believed the petitioner was *not* incapacitated—a defense available in sex offense prosecutions.[2]

While the appeal was pending, the legislature repealed chapter 7.90 RCW and enacted chapter 7.105 RCW, which consolidated civil protection orders into one chapter. FINAL B. REP. ON ENGROSSED SECOND SUBSTITUTE H.B. 1320, at 2, 67th Leg., Reg. Sess. (Wash. 2021). While the previous statute did not define "consent," the new statute does, defining it as "actual words or conduct indicating freely given agreement to . . . sexual contact." RCW 7.105.010(5). It also specifies that "[c]onsent cannot be freely given when a person does not have capacity due to disability, intoxication, or age." *Id.*

---

[2] Criminal defendants may bring evidence that they reasonably believed the victim was not mentally incapacitated where lack of consent is based solely on the victim's incapacity. RCW 9A.44.030(1).

*DeSean v. Sanger*, No. 101330-2

Months after chapter 7.105 RCW went into effect, the Court of Appeals reversed DeSean's SAPO, holding that the trial court erred in refusing to consider Sanger's defense that he reasonably believed DeSean had capacity to consent. *DeSean v. Sanger*, 23 Wn. App. 2d 461, 468, 516 P.3d 434 (2022). The court reasoned that under *Nelson*, the SAPOA should be read in harmony with the sex offenses chapter of the criminal code. *Id.* at 473-76. Because SAPOs are "'intended to provide a civil protective remedy to all rape victims recognized under criminal law,'" the court held that an affirmative defense available to criminal defendants is also available to SAPO respondents. *Id.* at 476 (quoting *Nelson*, 197 Wn. App. at 456).

DeSean sought our review, which was granted.[3] *DeSean v. Sanger*, 200 Wn.2d 1026 (2023).

## ISSUE

Is a respondent to a SAPO based on nonconsensual sexual penetration entitled to present the affirmative defense that they reasonably believed the petitioner had capacity to consent?

## ANALYSIS

The SAPOA allows victims of sexual assault to petition for a protection order against future interactions with their assailant. Former RCW 7.90.090(2) (2019). A

---

[3] Numerous amici curiae joined two briefs filed in support of DeSean. *See* Br. of Amici Fam. Violence App. Project et al.; Br. of Amici Sexual Violence L. Ctr. et al.

court issues a protection order if it finds by a preponderance of the evidence that the petitioner has been subjected to "nonconsensual sexual conduct or nonconsensual sexual penetration" by the respondent. Former RCW 7.90.090(1)(a).

Although we generally review a trial court's decision to grant or deny a protection order for abuse of discretion, *see Rodriguez v. Zavala*, 188 Wn.2d 586, 590, 398 P.3d 1071 (2017), this case requires us to determine whether the SAPOA permits respondents to present affirmative defenses. This presents a question of statutory interpretation, which we review de novo. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002).

We note that former chapter 7.90 RCW (2019) was in effect when DeSean filed her petition, so we interpret that statute to resolve this case. The new SAPOA, chapter 7.105 RCW, consolidates the SAPOA with other civil protection orders and adds several definitions. It does not change the basic procedures or requirements. Because chapter 7.105 RCW will govern any future proceedings, we reference and cite that statute to explain our analysis and provide guidance on remand.

The goal of statutory interpretation is to give effect to the legislature's intentions. *Campbell & Gwinn*, 146 Wn.2d at 9-10. We begin with the assumption that the legislature means exactly what it says. *State v. Delgado*, 148 Wn.2d 723, 727, 63 P.3d 792 (2003). Thus, where possible, we derive meaning from the plain language of the statute, considering the text of the provision, the context in which it is found, related provisions, and the statutory scheme as a whole. *State v. Ervin*, 169

*DeSean v. Sanger*, No. 101330-2

Wn.2d 815, 820, 239 P.3d 354 (2010). "If, after this inquiry, the statute is susceptible to more than one reasonable interpretation, it is ambiguous and we 'may resort to statutory construction, legislative history, and relevant case law for assistance in discerning legislative intent.'" *Id.* (quoting *Christensen v. Ellsworth*, 162 Wn.2d 365, 373, 173 P.3d 228 (2007)).

A.      *Criminal Affirmative Defenses Are Not Available under the SAPOA*

The parties agree that neither the former chapter 7.90 RCW nor chapter 7.105 RCW explicitly mention affirmative defenses. DeSean asserts that the statutes are unambiguous and do not permit affirmative defenses. We agree.

First, allowing SAPO respondents to raise affirmative defenses contradicts the principle that the legislature means what it says. We presume the absence of an affirmative defense was intentional, and we will not add words or clauses to an unambiguous statute when the legislature has chosen not to. *See Delgado*, 148 Wn.2d at 727-29.

Second, the SAPOA provides a civil remedy to victims and functions independently from criminal proceedings. In enacting the statute, the legislature declared:

> Sexual assault inflicts humiliation, degradation, and terror on victims. . . . *Victims who do not report the crime still desire safety and protection from future interactions* with the offender. *Some cases in which the rape is reported are not prosecuted.* In these situations, *the victim should be able to seek a civil remedy* requiring that the offender stay away from the victim.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

Former RCW 7.90.005 (2007) (emphasis added).

In contrast, the criminal code was created "[t]o forbid and prevent conduct that inflicts or threatens substantial harm to individual or public interests." RCW 9A.04.020(1)(a). The SAPOA focuses on victims, while the criminal code focuses on perpetrators. When the legislature amended the civil protection order chapter, its intent that the SAPOA function independently from the criminal code became even clearer. *See* RCW 7.105.900(3)(b) ("A victim should be able to expediently seek a civil remedy . . . *independent of the criminal process and regardless of whether related criminal charges are pending*," and victims "have a right to such safety and protection" (emphasis added)). The plain language of the statute does not indicate that the legislature intended to import criminal defenses to SAPO proceedings.

Moreover, several provisions within the SAPOA *explicitly prohibit* courts from considering any related criminal proceedings. *See, e.g.*, former RCW 7.90.090(1)(b) (2019) (prohibiting courts from denying a SAPO merely because the petitioner did not report the assault and prohibiting courts from requiring proof of such a report); former RCW 7.90.120(4) (2013) (discouraging courts from dismissing or suspending a parallel criminal prosecution in exchange for issuing a SAPO); *see also* RCW 7.105.565 (prohibiting courts from requiring criminal charges to be filed as a condition of granting a SAPO). Sanger's argument that the SAPOA should be read in conjunction with the criminal code because it mentions "crimes" is a red herring; the language is clearly used to provide context for the civil remedy.

*DeSean v. Sanger*, No. 101330-2

In sum, we hold that the under a plain reading of the SAPOA, a respondent is not entitled to present a criminal affirmative defense.

B.      *A Petitioner Seeking a Nonconsensual Sexual Penetration SAPO Need Not Prove the Respondent's Intent; Thus, the Defense of Reasonable Belief Is Unavailable*

Although the plain language of the SAPOA is clear enough, we briefly address DeSean's argument that a sexual *penetration* SAPO is a strict liability action such that importing an intent-based affirmative defense is inappropriate.

A SAPO may be based on nonconsensual sexual *conduct* or nonconsensual sexual *penetration*. Sexual conduct must be "intentional or knowing" on the part of the perpetrator. Former RCW 7.90.010(6) (2020); RCW 7.105.010(32). Sexual penetration, however, does not require any showing of intent. Former RCW 7.90.010(7) ("'[s]exual penetration' means any contact, however slight"); RCW 7.105.010(33).

A review of the civil protection order chapter shows that where the legislature intends to include a mens rea requirement, it does so. For instance, protection orders based on conduct that would be innocent but for the respondent's mental state specify the requisite mens rea. *See, e.g.*, RCW 7.105.010(32) (SAPO based on sexual conduct requires "intentional or knowing touching" or displaying), (14)(c) (vulnerable adult protection order (VAPO) based on financial exploitation requires "[o]btaining or using a vulnerable adult's property . . . *by a person or entity who knows or clearly should know* that the vulnerable adult lacks the capacity to consent to the release or

use of the vulnerable adult's property"), (2) (VAPO based on abuse requires "*intentional, willful, or reckless* action or inaction that inflicts injury"), (34)(c)(iii) (stalking protection order requires that "*respondent knows, or reasonably should know*" their conduct would frighten the victim).

Conversely, protection orders based on violence or other conduct that society has a strong interest in deterring *do not* contain mens rea requirements. *See* RCW 7.105.100(b), .010(33) (sexual penetration SAPO), (9) (physical harm or bodily injury domestic violence protection order), .100(d), .010(1) (abandonment VAPO), .100(1)(e) (extreme risk protection order). Although silence on the mens rea element is not dispositive, *see State v. Anderson*, 141 Wn.2d 357, 361, 5 P.3d 1247 (2000), we presume that the omission of intent or knowledge in certain protection orders, and its inclusion in others, is deliberate.

Sanger maintains that the legislature did not intend to create a separate class of strict liability offenses because a SAPO is a *civil remedy* for victims of a crime. He argues that imposing strict liability here "absolves a petitioner of responsibility for her choices and actions," Answer to Pet. for Rev. at 25, and points out that under the criminal statute, voluntary intoxication does not negate responsibility for choices made by a person under the influence. He also asserts that a lack of memory does not necessarily mean the victim was incapacitated. We reject these arguments because they do not rebut DeSean's position that a SAPO based on nonconsensual sexual penetration is a strict liability action.

*DeSean v. Sanger*, No. 101330-2

Interpreting the SAPOA as imposing strict liability for nonconsensual sexual penetration is consistent with the proposition that a person's liberty cannot be restricted as a result of passive conduct. *See State v. Blake*, 197 Wn.2d 170, 193-94, 481 P.3d 521 (2021). For those charged with crimes punishable by incarceration, loss of voting rights, and registration as a sex offender, the State must prove that the conduct violated the statute.[4] In those cases, the accused may present a defense of reasonable belief. *See* RCW 9A.44.030(1); RCW 10.64.140; RCW 9A.A.44.140. But a SAPO petitioner need not meet the standards of criminal cases, and they need only show by a preponderance of the evidence that they were the victim of nonconsensual sexual penetration. SAPO respondents are afforded an opportunity to testify and provide evidence. *See* former RCW 7.90.050 (2013); former RCW 7.90.080 (2006); former RCW 7.90.090 (2019); *see also* RCW 7.105.200(5). If the SAPO is granted, the respondent faces none of the punishments listed above, which permit affirmative defenses. *See Blackmon v. Blackmon*, 155 Wn. App. 715, 721, 230 P.3d 233 (2010) ("an order prohibiting contact[] is not a massive curtailment of liberty amounting to incarceration and is not criminal in nature").

In sum, a petitioner seeking a SAPO based on nonconsensual sexual penetration need not prove the respondent's intent. It is therefore similar to strict liability statutes.

---

[4] *State v. Deer*, 175 Wn.2d 725, 731, 287 P.3d 539 (2012) (child rape); *State v. Yishmael*, 195 Wn.2d 155, 172, 456 P.3d 1172 (2020) (unlawful practice of law); *State v. Christian,* 18 Wn. App. 2d 185, 489 P.3d 657 (2021) (interfering with reporting domestic violence).

11

*DeSean v. Sanger*, No. 101330-2

In these cases, the relevant inquiry is whether the petitioner had capacity to consent. If the answer is no, the respondent is not entitled to raise an affirmative defense that they reasonably believed otherwise.

C.     Nelson *is inapplicable*

The Court of Appeals relied on *Nelson*, 197 Wn. App. 441, in holding that Sanger is entitled to raise his affirmative defense. *See DeSean*, 23 Wn. App. 2d at 473-76. In *Nelson*, like here, the SAPO petitioner alleged incapacity due to intoxication. 197 Wn. App. at 444. The petitioner testified that she did not remember consenting to sex; the respondent testified she gave verbal consent. *Id.* The trial court found consent based on the respondent's testimony and denied the SAPO. *Id.*

On appeal, the court interpreted the use of "nonconsensual" in former chapter 7.90 RCW (2006). *Id.* at 444, 452-53. The court held that the individual giving consent must have capacity to do so and looked to the dictionary definition, the legislative statement of intent, and the sex offenses chapter of the criminal code. *Id.* at 453-55. It reasoned that "the legislature intended SAPOA to provide a broad civil remedy to protect victims of rape and sexual assault" and because it focused on sexual assault, "its terms should be read in harmony with the . . . criminal code." *Id.* at 454. Under the criminal code, victims may be incapable of consent if they are mentally incapacitated due to alcohol or drugs. *Id.* at 455. As such, a trial court must consider evidence that the victim lacked capacity to consent when ruling on a SAPO petition. *Id.*

12

*DeSean v. Sanger*, No. 101330-2

Sanger insists that because "capacity" is not defined in the SAPOA, *Nelson* requires that the criminal code's definition of "mental incapacity" and corresponding affirmative defense should be imported. We disagree.

*Nelson* explained that the legislature adopted the SAPOA to provide *additional protection for victims* given the large percentage of unreported and unprosecuted sex offenses.[5] 197 Wn. App. at 455. Thus, the *Nelson* court effectuated legislative intent to *protect victims* by considering the criminal definition when interpreting whether "nonconsensual" includes incapacity caused by substances. Our precedent requires us to read the statutes in harmony to maintain the integrity and purpose of both. *State v. Wright*, 84 Wn.2d 645, 650, 529 P.2d 453 (1974). Adopting Sanger's position would not further protect victims; it would allow respondents to affirmatively defend against any SAPO alleging incapacity due to intoxication. This would not necessarily further legislative intent to provide civil remedies to victims.

Even if we agreed with Sanger that under *Nelson*, we should consider the criminal code, he presents no authority that importing the definition of "mental capacity" from

---

[5] Several studies support this proposition. *See* LUCY BERLINER ET AL., SEXUAL ASSAULT EXPERIENCES AND PERCEPTIONS OF COMMUNITY RESPONSE TO SEXUAL ASSAULT: A SURVEY OF WASHINGTON STATE WOMEN 23 (2001) (just 15 percent of women who were sexually assaulted report to the police, and only half of those reports result in charges filed) https://www.depts.washington.edu/uwhatc/PDF/research/sexualassaultexpr2001-11.pdf [https://perma.cc/Y4GB-C3BS]; Kimberly A. Lonsway & Joanne Archambault, *The "Justice Gap" for Sexual Assault Cases: Future Directions for Research and Reform*, 18 VIOLENCE AGAINST WOMEN 145, 156-57 (2012) (5 to 20 percent of all rapes are reported to law enforcement, 7 to 27 percent of these reports are prosecuted, and 3 to 26 percent yield a conviction) [https://perma.cc/V4LK-2Q75].

the criminal statute also requires importing the availability of a criminal affirmative defense. *Nelson* did nothing of the sort.

Finally, unlike in *Nelson*, the term in question has now been explicitly defined by the legislature. *See* RCW 7.105.010(5) ("Consent cannot be freely given when a person does not have capacity due to . . . intoxication."). Although the former SAPOA was in effect at the time of the evidentiary hearing, the new statute was in effect when the Court of Appeals issued its decision. The new statute further solidifies that we need not consult related statutory codes or other interpretive tools to determine whether consent requires capacity. We need not look to the criminal code to define a term that is now explicitly defined in the statute. And, significantly, the legislature addressed incapacity and still chose not to include an affirmative defense.

CONCLUSION

We hold that a respondent to a SAPO based on nonconsensual sexual penetration is not entitled to raise an affirmative defense that they reasonably believed the petitioner had capacity to consent. Neither the former nor the current version of the SAPOA contemplates such a defense, and importing it from the criminal code is inappropriate. Accordingly, we reverse the Court of Appeals and remand for proceedings consistent with this holding.

14

*DeSean v. Sanger*, No. 101330-2

Owens, J.

WE CONCUR:

González, C.J.

Johnson, J.

Yu, J.

Madsen, J.

Montoya-Lewis, J.

Stephens, J.

Glasgow, J.P.T.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*DeSean v. Sanger*, No. 101330-2
(Gordon McCloud, J., concurring)

No. 101330-2

GORDON McCLOUD, J. (concurring)—I agree with the majority's

conclusion. Under former chapter 7.90 RCW (2020), a respondent to a SAPO

(sexual assault protection order) petition that is based on nonconsensual sexual

penetration may not raise the affirmative defense of reasonably believing that the

petitioner had the capacity to, and did, consent. I therefore agree with the majority

that we should reverse the Court of Appeals' holding on this statutory

interpretation point.

I write separately because the majority fails to mention the fact that the

Court of Appeals reversed the trial court's decision on *two* grounds: (1) the trial

court failed to consider respondent's affirmative defense and (2) the record

contains insufficient evidence to support the trial court's factual finding about the

large amount of alcohol that petitioner Carmella DeSean consumed and that caused

her incapacity. The majority addresses the first ground—the affirmative defense

issue. But the majority does not address the second ground—the lack of

evidentiary support for the trial court's factual finding about the amount of alcohol

1

*DeSean v. Sanger*, No. 101330-2
(Gordon McCloud, J., concurring)

that DeSean consumed. *DeSean v. Sanger*, 23 Wn. App. 2d 461, 464, 516 P.3d 434 (2022).

That second holding matters.  It provided an alternative ground for the Court of Appeals' decision to reverse the trial court. *Id.* No party sought review of that alternative ground for the Court of Appeals' decision to reverse the trial court. Pet. for Rev. at 1. The Court of Appeals' decision on that ground therefore stands.

The Court of Appeals' decision on that issue is also fully sustainable.  It held that the trial court's factual finding that "Bailey Duncan prepared the first two drinks which contained 8 ounces of tequila in a 20 oz. glass" was clearly erroneous. *DeSean*, 23 Wn. App. 2d at 477; Clerk's Papers at 121. It explained that the only evidence about the amount of liquor in each drink came from Duncan, and that he estimated that he poured "an eighth of a twenty-ounce glass, maybe less" of tequila. 1 Verbatim Rep. of Proc. (Dec. 12, 2020) at 34. As the Court of Appeals noted, this would equate to 2.5 ounces of tequila, or less, in each drink. *DeSean*, 23 Wn. App. 2d at 477. However, the trial court's factual finding states that there were 8 ounces of tequila in *each* drink—an extraordinary amount of alcohol.

If an erroneous finding of fact "materially affect[ed]" a trial court's decision, then this amounts to prejudicial error and constitutes grounds for reversal. *In re Est. of Bailey*, 178 Wash. 173, 176, 34 P.2d 448 (1934) (citing *Townsend Gas & Elec. Light Co. v. Hill*, 24 Wash. 469, 64 P. 778 (1901)); *In re Dependency of A.C.*,

2

*DeSean v. Sanger*, No. 101330-2
(Gordon McCloud, J., concurring)

1 Wn.3d 186, 525 P.3d 177 (2023). The Court of Appeals followed that rule: it

held that this erroneous trial court finding was prejudicial because it was material

to the outcome at the trial court. The Court of Appeals explained that "a finding

that the first two drinks consumed by Ms. DeSean collectively contained a pint of

hard liquor is such compelling evidence of excessive alcohol consumption that it

could have been heavily weighted and even colored the court's perception of other

evidence." *DeSean*, 23 Wn. App. 2d at 477. This explanation is fully sustainable:

the difference between 5 ounces of liquor and 16 ounces of liquor is significant

enough that it could have "materially affected" the trial court's determination about

whether DeSean was incapacitated.

     As mentioned above, no one sought review of that decision. It therefore

stands.

     But that means that the majority's decision to "reverse the Court of Appeals

and remand for proceedings consistent with this holding," majority at 14, does not

end this case. Remember that the Court of Appeals held that the evidence was

insufficient to support the trial court's finding about the amount of alcohol DeSean

drank and also held that that error impacted the trial court's conclusion that

DeSean lacked capacity to consent. *DeSean*, 23 Wn. App. 2d at 477. Because those

holdings survive undisturbed, the trial court must now act in accordance with those

holdings on remand. Specifically, the trial court must decide, based on its

3

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*DeSean v. Sanger*, No. 101330-2
(Gordon McCloud, J., concurring)

remaining factual findings, whether DeSean lacked capacity and therefore suffered

nonconsensual sexual penetration.

I therefore respectfully concur.

_____
Gordon McCloud, J.

4